CELIA LACKS, Appellant, v. ROLLA WELLS, Receiver of UNITED RAIL-
WAYS COMPANY of St. Louis, and ST. LOUIS PUBLIC SERVICE COM-
PANY.—44 S. W. (2d) 154.

Division One, December 2, 1931.

328

*Fred Berthold* for appellant.

*T. E. Francis, B. G. Carpenter* and *Hensley, Allen & Marsalek* for respondents.

ATWOOD, J.—This case comes to the writer upon reassignment. It is an appeal by plaintiff in a personal injury suit for $10,000 from a judgment for defendants on a directed verdict.

The case was tried upon plaintiff's second amended petition, which, after formal allegations as to the corporate existence of defendants and their relations each to the other, alleged that "on or about the 15th day of March, 1927, at about eleven o'clock in the morning, plaintiff was passenger on a southbound Jefferson Avenue street car of the defendant Rolla Wells, Receiver of the United Railways Company of St. Louis, and when said street car arrived at a point between Geyer Avenue and Allen Avenue on Jefferson Avenue, or about in front of 1915 South Jefferson Avenue, the defendant, his agents and servants carelessly and negligently opened the doors of said car and invited plaintiff to alight at said point, which was not the usual and customary stopping place for southbound Jefferson Avenue street cars, and plaintiff, while alighting from said street car at said point, was struck and knocked back into the street car by an automobile which was being driven southwardly on Jefferson Avenue in an attempt to pass said standing street car, and as a direct result thereof plaintiff sustained the serious and permanent injuries," etc. The petition further alleged "that the defendant, his agents and servants in charge of and operating said southbound Jefferson Avenue street car in stopping said street car in front of about 1915 South Jefferson Avenue were guilty of the following acts of carelessness and negligence, to-wit:

"First. Said defendants, its agents and servants carelessly and negligently stopped said street car at a place that was not the customary and usual stopping place for said street cars and invited plaintiff to alight from said street car at said point, when said defendants, its agents and servants knew, or by the exercise of the highest degree of care could have known, that to allow plaintiff to alight from said street car between the blocks of Geyer Avenue and Allen Avenue plaintiff was likely to be struck and injured by passing vehicles.

"Second. It was the duty of the defendants, its agents and servants in charge of said car to stop said car either at Geyer Avenue or Allen Avenue for the purpose of allowing plaintiff to alight therefrom, but carelessly and negligently stopped said street car between said car stops and at a point which was not the usual and customary stopping place and at a point where the defendant maintained no safety zone or platforms, when the defendants, its agents and servants

knew, or by the exercise of the highest degree of care could have known, that it was dangerous and unsafe to allow plaintiff to alight between said blocks; and the defendants, its agents and servants knew, or by the exercise of the highest degree of care could have known, that plaintiff was likely to be struck by passing vehicles.

"Third. Said defendants, its agents and servants carelessly and negligently failed to exercise the highest degree of care toward plaintiff to provide plaintiff a reasonably safe place from which to alight from said car, in that said street car was not stopped at the usual and customary stopping place.

"Fourth. On and prior to said 15th day of March, 1927, the defendants, its agents and servants maintained a custom that, when the exit doors of the car were opened by the conductor in charge of the car, it was an invitation to the passengers to alight, and that on said 15th day of March, 1927, the defendants, its agents and servants did open the exit door of said car upon which plaintiff was a passenger after said car had come to a full and complete stop, and did invite plaintiff to alight from said car at said point between Geyer and Allen avenues, when the defendants, its agents and servants knew, or by the exercise of the highest degree of care could have known, that said point was not a reasonably safe place for passengers to alight."

Defendants' joint amended answer consisted of a general denial, plea of plaintiff's contributory negligence, and a further allegation that on or about May 17, 1927, plaintiff filed suit on the same cause of action against one Maurice Hartman, doing business as Auto Sales & Service Company, which said defendant was operating the motor vehicle alleged to have collided with plaintiff; that whatever right of action accrued to plaintiff on account of said collision existed solely against the said Hartman, who has paid plaintiff large sums of money in full and complete satisfaction of said alleged injuries. Plaintiff's reply was a general denial.

At the close of plaintiff's case defendants offered a demurrer to the evidence which was sustained. Appellant assigns this action of the court as error. The parties stipulated and agreed at the trial, first, that Rolla Wells was duly and regularly appointed receiver of the United Railways Company; second, that at the time in question the car in question was owned by the United Railways Company of St. Louis, a corporation, and at the time was being operated by the agents and servants of Rolla Wells, Receiver. Next, that since the accident all of the properties of the United Railways Company were sold to and acquired by the St. Louis Public Service Company, a corporation, and that the St. Louis Public Service Company, a corporation, has, by the decree of the Federal court, been made responsible for any liabilities, if any, of Rolla Wells, Receiver, and (or)

the United Railways Company; that plaintiff, on the date set out in the petition, became a passenger on a southbound Jefferson Avenue car, which reached Geyer Avenue and Jefferson Avenue just before 11:10 A. M.; that Geyer Avenue, Allen Avenue and Jefferson Avenue are open, public streets and highways in the city of St. Louis; that the street car in question, after leaving Geyer Avenue, proceeded southwardly to a point in front of 1914 Jefferson Avenue, which is what is known as the Jefferson Avenue car sheds, which are located between Geyer Avenue and Allen Avenue, Allen being the first street south of Geyer; that the plaintiff at that time lived at 1915 South Jefferson Avenue, all of this being on March 15, 1927; that the plaintiff lived over a store that was operated by herself and her husband, and they occupied the second floor as a residence, at 1915 South Jefferson; that this point is not the regular and usual stopping place, and was not at that time, for receiving or discharging passengers from southbound Jefferson Avenue cars, the usual and regular stopping places being, respectively, on the northwest corner of Geyer and also the northwest corner of Allen, at their intersection with Jefferson; that the car came to a stop in front of 1914 South Jefferson, where the sheds of the company are located; that the plaintiff, having been a passenger on this car, started to alight from the car at this stop in front of the sheds, which is, roughly speaking, about midway between Geyer and Allen avenues; that a man alighted ahead of her and was in movement toward the west, how far he had gone to be developed by the witnesses; that the plaintiff alighted after this man and was struck by the left front fender of a southbound automobile and thrown back into the street car; that what injuries, if any, are to be developed by the witnesses; that the street car involved is what is known as the 900 type, which has the entrance at the front and the exit, by means of air-controlled doors, in the center of the car; that the day was bright and clear, the streets were dry and the time of the accident was in broad daylight; that plaintiff brought suit against Maurice Hartman who was the owner of the automobile that struck her; that thereafter plaintiff entered into a covenant not to sue Maurice Hartman, and the total consideration received, including plaintiff's own claim and the claim of her husband for loss of services, was one thousand dollars, nine hundred and fifty going to her, and fifty dollars to the husband; and that the copy of the covenant not to sue, marked "Exhibit A" by the stenographer, is a copy of that covenant and may be considered as evidence in the case. Appropriate reference will presently be made to plaintiff's evidence.

Plaintiff's allegations of negligence are commingled statements of the following specified acts: (1) stopping the street car at a place that was not its customary and usual stopping place and inviting

plaintiff to alight therefrom, when defendants, its agents and servants knew, or by the highest degree of care could have known, that in so alighting plaintiff was likely to be struck and injured by passing vehicles; (2) failure to stop the street car at Geyer and Allen avenues and allow plaintiff to alight at one or the other of these points. More tersely stated, the gist of the negligence pleaded is that defendants, their agents and servants carelessly and negligently failed to exercise the highest degree of care to provide plaintiff a reasonably safe place from which to alight from said street car, in that they stopped said street car at a place not reasonably safe, and not at the usual and customary stopping place, and there invited her to alight therefrom.

The general rule as to duty of carriers in discharging passengers is thus stated in Rearden v. Railroad, 215 Mo. 105, 132, 133, 114 S. W. 961 (quoting with approval Fillingham v. Railroad, 102 Mo. App. 573, 581, 77 S. W. 314):

"The degree of care required of the carrier for a passenger's safety while he is leaving the vehicle is as high as that required while he is in transit; that is to·say, the extraordinary care imposed by law on carriers of passengers begins when the contract of carriage takes effect on the rights of the parties and continues unimpaired until the contract ends with deposit at destination, thus protecting passengers as they get on and off conveyances. Part of this duty to safeguard passengers while leaving the car or other vehicle consists *in taking care to put them off at a reasonably safe place.*"

To like effect is our earlier ruling in O'Brien v. Transit Co., 185 Mo. 263, 268, 84 S. W. 939, wherein we quoted as follows from 3 Thompson on Negligence, sec. 3518:

"At the outset it is to be remembered that the person attempting to alight from the carrier's vehicle is *still a passenger* until he has accomplished the act of alighting in safety; and that the street car company is a *carrier of passengers,* and owes to the passenger attempting to alight that *very high degree of care* and attention which the law puts upon it generally, to the end of promoting the safety of its passengers. The degree of care required under these circumstances has been described as the greatest care consistent with the practical operation of its cars."

But there is a well recognized distinction between railroads and street railways as to the status of a passenger after alighting from a carrier's vehicle. It is thus noted in 4 R. C. L. 1047:

"The general rule just considered that in the case of a carrier having exclusive control or occupation of its tracks and stations, one traveling may still retain the status of a passenger after alighting from the carrier's vehicle, is from the nature of things not applicable to carriers not so situated, as for instance in the case of persons traveling on

street railway cars. While a person attempting to alight from a street car remains a passenger until he has accomplished the act of alighting in safety, and the carrier owes to the passenger attempting to alight that very high degree of care and attention which the law puts upon it generally to the end of promoting the safety of its passengers, and will be liable for negligent injury to the passenger while so alighting, it is the generally accepted view that one who has alighted from a street car and is in safety upon the highway is no longer a passenger, but is thenceforth a traveler upon the highway, and subject to all the duties and obligations imposed upon such travelers, and the railway company is not responsible to him as a carrier for the condition of the street, or for his safe passage from the car to the sidewalk.''

Much case law has grown out of injuries sustained by persons struck by other vehicles while alighting from street cars or immediately thereafter. In Wood v. North Carolina Pub. Serv. Corp., 1 A. L. R. 942, 944, 174 N. C. 697, 94 S. E. 459, it was held by a divided court that defendant street railway company was negligent in permitting ''plaintiff, a passenger, to alight on a roadway, along which one or two automobiles were passing each minute, immediately in front of an automobile moving rapidly, without warning, and when the conductor of the defendant, who knew of the dangers of the road, did not look to see if any danger was approaching.'' See also Loggins v. Southern Pub. Utilities, 181 N. C. 221, 106 S. E. 822, and Traction Co. v. Raymond (Miss.), 128 So. 327, the latter disclosing circumstances that would distinguish it from the instant case. These rulings, however, are diametrically opposed to the present weight of authority appearing in text and annotation of Chesley v. Waterloo C. F. & N. Railroad Co., 12 A. L. R. 1366, 188 Iowa, 1004, 176 N. W. 961. And see, also, Jacobson v. Omaha & C. B. Street Ry. Co., 31 A. L. R. 563, 109 Neb. 356, 191 N. W. 327; and Ruddy v. Ingebret, 44 A. L. R. 159, 164 Minn. 40, 204 N. W. 630.

In the Chesley case, the destination of plaintiff's intestate was not shown. The car in which he was riding was stopped midway between streets because of a car standing on the same track ahead of it. Passengers desiring to enter or leave the car at this point were frequently permitted to do so, and on this occasion when the car stopped for a few seconds this passenger arose from his seat, proceeded to the exit, the door was thrown open and he alighted, took a step or two in the direction of the curbing and was struck by a passing automobile sustaining injuries from which he died. Held, the court did not err in directing a verdict for defendant.

In the Jacobson case, as plaintiff's intestate descended from a street car, which was stopped at a regular stopping place, ''she took one long step out onto the pavement, and was just in the act of

swinging her other foot forward, to take another step, when she was struck by a motorcycle which was just then passing close to the car at a great speed.'' In affirming judgment on a directed verdict for defendant the court said: ''We cannot say that a street railway company is, as a general rule, required to watch for and to warn its passengers who are about to descend into the street, against those obvious dangers from moving vehicles which are incidental to and common on the street and are known to all.'' While this rule is not inflexible and is subject to exceptions (Jacobson case, p. 571), yet any other rule would impose upon the carrier a duty not only unreasonable but inconsistent with the practical operation of its cars, if not altogether impossible of performance. [Farrington v. Boston Elev. Ry. Co., 202 Mass. 315, 88 N. E. 578.] The Jacobson opinion approves the doctrine and ruling in Ellis v. Hamilton Street Ry. Co., 48 Ont. L. Rep. 380, a case in which a street car had stopped, at the instance of the passenger, in the middle of the block, and not at the customary stopping place. Upon leaving the car, and at a moment when the court recognized that the relation of passenger and carrier still continued, she was struck by a passing vehicle. The court held that there was no evidence of any negligence on the part of the street car company causing the injury which would support the findings of the jury in favor of the plaintiff.

In the Ruddy case, plaintiff was standing on the front steps of the street car when it stopped. She undertook to alight in the usual way, but a truck, being driven rapidly and in violation of law, struck her before her feet were on the pavement. There was a statute in force requiring the driver of the truck to stop not less than ''10 feet behind the street car.'' The street car was equipped with a mirror by which the motorman could see the rear gates in order that he might know when he could safely close them. Plaintiff urged that it was defendant's duty to observe the approach of automobiles and protect alighting passengers from danger of being struck thereby. In denying this claim and affirming judgment on a directed verdict for defendant the court thus stated the practical reasons underlying this doctrine (1. c. 161):

''But this is an obvious danger incident to all streets. It is a peril known to all passengers. The danger may come without warning, and, as in this case, it usually results from a violation of the statutory prohibition. In fact, the risk from such danger is more apparent to the passenger than to the motorman, because the passenger can, and should, remain on the street car until he knows that it is safe for him to step onto the street. Being able to so effectually care for himself, the law should not charge some one else, who obviously cannot do so as well, with the duty of protecting him from such obvious and common dangers. It would, under the circum-

stances, be impracticable to require the company to take the responsibility of protection against these obvious dangers of the street. The motorman has no way of knowing when a driver will instantaneously become a wrongdoer. He at best could have but little judgment as to these dangers when he is attending his usual duties. The imposition of this additional and exacting duty would necessarily delay traffic with little hope of successful avoidance. The company is not the creator of these conditions or street dangers and they are beyond its control. To say that its duty requires it to protect the passenger from them is, in effect, to make it an absolute insurer of safety to the passenger. The very nature of these obvious dangers, which are necessarily within the knowledge of all, and which do not include defective equipment or manipulation of the company's instrumentalities, makes it impracticable for the company to cope with them, while, on the other hand, they may be successfully avoided by ordinary diligence on the part of the passenger in stepping from the street car into the street. The law gives him all reasonable time, under the circumstances, to safely act and his right in this respect will be zealously guarded. He is not required to advance into the zone of danger. He is given a full view of the street in all directions and he may control his movements by the necessities of the occasion. He should determine when his path is safe. Having this privilege, he cannot charge actionable negligence to the company for failure to discharge a duty which is his. For him, the duty is simple and easy. For the company, the responsibility would be so burdensome and impracticable that it would be unreasonable, hence cannot be held to be its duty.''

As said in Craig v. Railroad, 142 Mo. App. 314, 317, 126 S. W. 771: ''The carrier is not the insurer of the safety of his passenger, who is held to exercise reasonable care for his own safety when in the act of alighting from the carrier's conveyance.''

In the recent case of Downs v. Northern States Power Co. (Wis.), 228 N. W. 471, decided January 7, 1930, the complaint alleged that plaintiff was a passenger on one of defendant's street cars; that she rang the bell and stood at the door of the street car ready to alight at the customary stopping point at a street intersection; that the car ran past the intersection and stopped in front of plaintiff's home; that the vestibule door was opened, inviting plaintiff to alight; and that, as she was in the act of bringing her left foot to the pavement, she was struck and injured by a passing motorcycle which was traveling in the same direction as the street car. The substance of the allegations of negligence was that the company failed to perform the duty imposed on a carrier of passengers when it stopped its car in the middle of the block, not at a usual stopping place, and invited plaintiff to alight without warning her of the danger of injury from

the passing motorcycle which struck her. In approving the action of the trial court in sustaining defendant's demurrer to the complaint the opinion quotes liberally from the opinions in the above cited Chesley, Jacobson and Ruddy cases.

Turning now to plaintiff's evidence in the instant case we find that she testified that she wanted to get off at Allen Avenue and when the car left Geyer Avenue she rang the bell. She further testified that when the conductor stopped the car in the middle of the block between Geyer and Allen Avenues "he was opening the door, and a man got off, and then I was stopping right with my basket where he gives the transfers. He says, 'give me the transfer to get off.'" She said that the man who got off "was already on the sidewalk," and she "was figuring it was the wrong place." However, there is no evidence that she communicated her thoughts to the conductor or told him that she wanted to get off at Allen Avenue. Her account of what next transpired is as follows:

"I took my basket. I was trying to get off. Then I was coming down with one foot, and I took my basket, and when I was coming down—I never stepped a step—but I just put my right foot down, and a machine was coming suddenly. I never saw it. I saw no machine. It just knocked me down with the fender on the left foot and hit me here (indicating), and then I was falling back again in the steps.

"Q. In the steps of the car? A. In the steps.

"Q. Now, when you stepped down into the street, where was your basket? Did you have your basket in your hand or was it on the platform of the car? A. It was still on the platform. Then I took my basket. When I came down with the right foot, I took my basket. I didn't hold the basket because it was too heavy; and that's all.

"Q. Where was the conductor, when you were down there in the street picking up the basket? Where was the conductor of the car at that time? A. He was there.

"Q. Where? A. In his place where he stays, where he collects his transfers.

"Q. You mean he was in the booth of the car? A. In the booth, sure. . . .

"Q. And when you were struck, which way were you facing? A. Facing to the north.

"Q. And, after you were struck, you say you were thrown back into the street car? A. Then I was thrown back to the street car and hurt my spine."

In this connection she testified on cross-examination as follows:

"Q. Now, you say you first put your left foot down on the street, did you? A. Sure.

"Q. Then you came down with your right foot? A. Yes, sir.

"Q. Then, after you came down with your right foot, you picked up your basket with your right hand? A. Yes, sir.

"Q. And you were facing to the north? A. Yes, sir.

"Q. And this automobile that hit you came from the north, didn't it? A. Sure.

"Q. And you had picked up your basket before you were hit, hadn't you? A. I picked up the basket before; sure.

"Q. Yes. You picked up this basket in your hand before this automobile hit you? A. Sure. . . . .

"Q. (Interrupting) So when you picked up your basket with the right hand, you were facing north, and then got hit on the left side, between the hip and the knee? A. Straight here (indicating).

"Q. And then that threw you back—it is agreed she is indicating the left side between the hip and the knee—then you say that threw you back into the street car? A. Yes, sir."

It thus appears from plaintiff's own testimony that when the street car stopped in the middle of the block she voluntarily started to leave the car, stopped near the conductor who called for her transfer, and without ever telling him that she wanted to get off at Allen Avenue, she proceeded to alight from the car at that place and had completely done so when the automobile struck her, although before getting off the street car she knew it had not reached Allen Avenue. Counsel for appellant suggests that the conductor ordered her to get off the car, but such is not the import of what plaintiff says the conductor said, nor was any such thing pleaded. The significance of her ringing the bell just after the street car left Geyer Avenue and of defendant's stopping the car and opening the door in the middle of the block, in relation to defendants' alleged negligence, disappears in the light of her own admitted conduct. The record further shows that plaintiff was then about forty-nine years old and there is no evidence that her physical condition and mental faculties were in anywise impaired. She made no request for guidance or assistance, and the petition does not plead that defendants owed her any duty to render such. For more than twenty-two years she had been riding street cars in St. Louis, and on this occasion she voluntarily alighted in front of the car sheds at 1914 South Jefferson Avenue well knowing that place was in close proximity to her home at 1915 South Jefferson Avenue where she had lived for the past five or six years. It was mid-day, the weather was bright and clear and the street was dry. There was no evidence of frequent use of that part of the street at that time by passing vehicles, or that defendants knew or by the exercise of the highest degree of care could have known that in alighting from the street car at that place plaintiff was likely to be struck by passing vehicles.

As a matter of fact, in this case plaintiff testified positively that there were no other automobiles in the street, either moving or parked, except the one that struck her, and one of her witnesses testified that this automobile "couldn't have been going over ten or fifteen miles an hour." The conductor properly remained at his booth inside the car, and there is no showing that he or any other agent or servant of defendants saw or by the exercise of the highest degree of care consistent with the practical operation of the street car could have observed that this automobile was going to pass in time to have averted the accident.

Furthermore, the following statute (paragraph M, Sec. 21, Laws 1921, extra session, p. 95) was in force:

"An operator or driver of a motor vehicle shall stop same not less than five feet from the rear of any street car going in the same direction which has stopped for the purpose of taking on or discharging passengers, and shall remain standing until such car has taken on or discharged such passengers; provided, however, said driver or operator may pass such street car where a safety zone is established by the proper authorities, or where said operator or driver may pass such car at a distance of at least eight (8) feet clearance therefrom; and provided further, that he shall slow down and proceed cautiously."

This is not a case where a street car was suddenly stopped between street intersections and the passenger discharged immediately in front of passing vehicles the drivers of which had a right to believe that nothing of the kind would occur. This street car had been stationary and the doors open for the exit of passengers for an appreciable length of time, because at least one passenger had reached the sidewalk before plaintiff alighted. As the court said in Ellis v. Hamilton Street R. W. Co., 48 Ont. Law Rep. 380, 383, supra, where a similar law was under consideration, "there is nothing in the act that makes the obligation or duty of the driver of an automobile less when the street car is stopped at a point other than the regular stopping place." For aught the record here discloses defendants violated no established rule, ordinance or law in stopping the street car and discharging passengers at the point in question. Certainly defendants did not owe plaintiff the duty of anticipating that drivers of automobiles would violate the law under the circumstances here in evidence, and it appears that the accident would not have happened if this driver had not done so.

As we read the record it is utterly barren of any evidence that defendants failed to discharge any duty they owed plaintiff under the circumstances pleaded and proved. Entertaining this view we deem it unnecessary to discuss other points briefed, such as proximate cause and plaintiff's own negligence. In thus disposing of the

case we do not want to be understood as approving all that is said in the cited opinions in other jurisdictions, but we have detailed them somewhat at length in order to show that our ruling on the facts here in evidence is well within the modern trend of authority.

Plaintiff having failed to make a case for the jury defendant's demurrer to the evidence was properly sustained. The judgment is affirmed. All concur.