PAUL R. MEYER, RESPONDENT, v. ST. LOUIS PUBLIC SERVICE COMPANY, A CORPORATION, APPELLANT.—253 SW 2d 525.

St. Louis Court of Appeals. Opinion filed December 16, 1952.

Respondent's application to transfer to the Supreme Court denied January 16, 1953.

*Carroll J. Donohue, Salkey & Jones* and *W. H. S. O'Brien* for Appellant.

*Mortimer A. Rosecan, Inman, Dyer, Gray & Dreher,* and *Charles E. Gray* for Respondent.

RUDDY, J.—This is an action brought by Paul R. Meyer against St. Louis Public Service Company to recover damages for personal

injuries sustained on January 31st, 1949, by reason of a fall which occurred while plaintiff was descending a flight of steps near a bus stop at Charlack Avenue and St. Charles Rock Road in St. Louis County. The jury returned a verdict in favor of plaintiff and against defendant in the sum of $10,000.00. Following a remittitur of $2500.00, ordered by the trial court as a condition to the overruling of defendant's motion for a new trial, judgment for $7500.00 was rendered and defendant appeals to this court, listing seven assignments of error. In view of the conclusion we have reached, we are limiting our opinion to a review of defendant's first assignment, that the trial court erred in overruling its motion for a directed verdict for the reason that plaintiff failed to prove a claim upon which relief could be granted.

In his petition plaintiff charged that the defendant, a common carrier, possessed, operated and maintained a right-of-way along St. Charles Rock Road and had installed and maintained a regular bus stop and crossing from the right-of-way to adjacent streets; that as a part thereof defendant installed and maintained steps descending from St. Charles Rock Road to the right-of-way; that plaintiff alighted from defendant's bus and proceeded onto the steps and while thereon did trip, stumble, slip and fall as a result of defendant's negligence. The allegations of negligence were (1) that the steps, bus stop and crossing were not a reasonably safe place for the discharge of passengers, for plaintiff to alight, and for persons to cross the right-of-way; (2) that defendant failed to exercise ordinary care to keep its right-of-way and the steps in a reasonably safe condition for use by plaintiff and instead maintained the same in a condition not reasonably safe for him; (3) that defendant failed to warn plaintiff of their unsafe condition.

Defendant's answer consisted of a general denial.

St. Charles Rock Road is south of defendant's right-of-way and the Rock Road and right-of-way run east and west and parallel each other at the place in question. The north line of St. Charles Rock Road right-of-way is the south line of defendant's right-of-way. The right-of-way of the public road is sixty feet wide. The traveled portion of the public road consists of a concrete slab forty feet three inches wide. Defendant's right-of-way is fifty feet wide. The level of defendant's right-of-way is below that of the public road. The steps in question have been there fifteen or twenty years and consisted of three boards leading from one level to the other and are on the public road right-of-way. The evidence does not disclose who built these steps. At the top of the bank a row of concrete posts is set in the ground on the public road extending twenty-five feet or more to the east of the steps and about the same distance to the west thereof. This row of posts parallels the public road and defendant's right-of-way. The posts are spaced several feet apart and are connected by heavy wooden

rail boards in the form of a barricade. There were three openings between these posts, one between the two posts at the top of the steps and two immediately east of the steps. From the two last mentioned openings a path leads down the incline from the public road to the level of defendant's right-of-way. At the bottom of the bank a steel barricade is located on defendant's right-of-way south of the streetcar tracks. It is made out of pipe, approximately hand-rail height, and parallels the row of concrete posts. There is an opening therein at the bottom of the steps and at the end of the path leading from the openings in the board barricade.

For many years defendant operated streetcars over its right-of-way. This was known as the Woodson line. Charlack and St. Charles Rock Road was a regular stop on the Woodson line. On December 29, 1948, defendant discontinued the use of streetcars and substituted buses therefor on this road. A bus stop was maintained on St. Charles Rock Road, at its intersection with Charlack Avenue, alongside the concrete posts that form the barricade. The streetcar rails, however, were still in place on January 31, 1949.

Plaintiff on the evening of January 31, 1949, was a passenger on a Woodson Road bus operated in a westerly direction on St. Charles Rock Road. At about six or six-fifteen P.M. he alighted from said bus at a point where the bus usually stopped for the intersection of Charlack Avenue with St. Charles Rock Road and about five feet east of the steps. He walked to the steps, held on to a post with his left hand and walked down two or three steps. He then let loose of the post when he wanted to take the next step and thereafter his foot slid and he fell landing on his back. These steps were covered with mud and leaves, a condition that had existed at least two years, and possibly ten years, according to plaintiff's witnesses. The day before the accident a severe sleet storm had occurred and covered the area with ice. This condition continued to exist the evening of the accident and these steps and the surrounding area were covered with ice making pedestrian travel difficult. Plaintiff had lived in this neighborhood for nine years and was aware of the mud and leaves on the steps and had observed dirt, leaves, and mud on these steps for several years before the accident. The morning of the accident plaintiff ascended these steps and observed the mud and leaves on the steps, covered with ice. Plaintiff lived north of St. Charles Rock Road and it was his habit and custom to use these steps in order to reach the lower level of defendant's streetcar right-of-way and proceed north on Charlack Avenue. For many years, when the streetcar line was operating, people living south of St. Charles Rock Road used the steps in going to and from the streetcars. After the defendant discontinued the operation of the streetcars, the people living north of St. Charles Rock Road used the steps in going to and from the buses.

Several years before plaintiff's fall, an automobile accident occurred near these steps and the concrete posts. Shortly thereafter defendant fastened board planks to these concrete posts and thereby barred all discharged passengers from proceeding directly north from the point of discharge, except when they were discharged directly in front of the steps. All passengers, seeking to go north from the bus stop, except those discharged directly in front of the steps, had to walk to the steps or the openings leading to the pathway alongside of the steps. This situation likewise faced all prospective passengers coming from the north and approaching this bus stop.

A work car of the defendant, operated on its streetcar tracks, was observed occasionally at or near these steps. Men would get off this car and work on and around the steps. At various times a man was observed cutting the weeds and grass in this area. No one had ever been seen cleaning the steps.

In support of its position that the trial court should have sustained its motion for a directed verdict, defendant asserts that at the time plaintiff was injured he was a traveler upon the public highway who had assumed all risks and hazards incident to pedestrian travel; that its duty to plaintiff as a passenger on its bus was fully discharged when he alighted from the bus safely on the public highway; that it owed plaintiff no duty with regard to the steps, contending that they were not built or maintained by it and were not located on its property. In further support of its position defendant asserts that plaintiff was fully aware of the condition of the steps and nevertheless elected to use them.

Before ruling on the merits of the position taken by defendant we are confronted with a contention of plaintiff that we cannot consider defendant's contention that its motion for a directed verdict should have been sustained because defendant's motion for directed verdict fails to comply with Section 510.210, R. S. Mo. 1949, 31 V.A.M.S., which requires that the grounds for such motion must be made known to the court. The only reason given in the motion when presented to the trial court is that under the law and the evidence, plaintiff is not entitled to recover against the defendant. In Rothweiler v. St. Louis Public Service Co., Mo. App., 224 S.W. 2d 569, l.c. 572, this court said: "'* * * even if the general language of the motion is to be regarded as in and of itself insufficient to satisfy the requirements of the new code, * * * it does not follow that this court is precluded from inquiring whether the motion was correctly ruled." It is a sufficient compliance with the provisions of Section 510.210, R. S. Mo. 1949, 31 V.A.M.S., if, in the course of the trial, the movant makes known to the court, the grounds on which he is relying to have his motion sustained. Rothweiler v. St. Louis Public Service Co., supra; Ashton v. Buchholz, 359 Mo. 296, 221 S.W. 2d 496; Oganaso v. Mellow, 356 Mo. 228, 201 S.W. 2d 365. An examination of the record in the

instant case indicates, from the objections made by counsel for defendant in the course of the voir dire examination and in the trial itself and from the nature of the amendment sought to be made when defendant offered its second amended answer, that the trial court must have known the grounds urged here by defendant in support of its contention. We, therefore, overrule this contention of plaintiff.

In view of the facts outlined, our immediate obligation is to ascertain the duty, if any, the defendant, as a carrier of passengers, owed to the plaintiff at the time of the accident. It is an elementary principle of the law of torts that there can be no actionable negligence in the absence of the existence of some duty on the defendant's part owing to the plaintiff, which duty has been neglected or violated by the defendant, with the injury suffered by the plaintiff directly attributable thereto and flowing therefrom. Vairo v. Vairo, Mo. App., 99 S.W. 2d 113. This duty, or lack of duty, cannot be ascertained until we have determined the legal relationship existing between the parties at the time of plaintiff's injury.

Plaintiff in his brief states that the case was not submitted to the jury on the theory that the plaintiff was still a passenger at the time he sustained his injury. However, in plaintiff's principal instruction, the jury was required to find that, "the defendant failed to exercise ordinary care to provide plaintiff with a reasonably safe place in which to alight from said bus." It will be observed that the care required to be exercised by the defendant under this instruction was "ordinary care." If the relationship of passenger and carrier existed at the time of plaintiff's injury, the law imposes on the defendant the exercise of the highest degree of care. Unquestionably, the carrier's duty to exercise the highest degree of care continues until the passenger has been discharged from the streetcar or bus at a reasonably safe place. Gott v. Kansas City Rys. Co., Mo., 222 S.W. 827. After the passenger has safely alighted from the streetcar or bus and is upon the highway, he is no longer a passenger and the carrier is no longer responsible to him as such.

In Lacks v. Wells, 329 Mo. 327, 334, 44 S.W. 2d 154, 156, the court in discussing the liability of a carrier to a passenger, quoted approvingly from 4 R.C.L. p. 1047, as follows:

" 'The general rule just considered that in the case of a carrier having exclusive control or occupation of its tracks and stations, one traveling may still retain the status of a passenger after alighting from the carrier's vehicle, is from the nature of things not applicable to carriers not so situated, as for instance in the case of persons traveling on street railway cars. While a person attempting to alight from a street car remains a passenger until he has accomplished the act of alighting in safety, and the carrier owes to the passenger attempting to alight that very high degree of care and attention which the law puts upon it generally to

the end of promoting the safety of its passengers, and will be liable for negligent injury to the passenger while so alighting, it is the generally accepted view that one who has alighted from a street car and is in safety upon the highway is no longer a passenger, but is thenceforth a traveler upon the highway, and subject to all the duties and obligations imposed upon such travelers, and the railway company is not responsible to him as a carrier for the condition of a street, or for his safe passage from the car to the sidewalk.' ''

Also, see Smuzynski v. East St. Louis R. Co., 230 Mo. App. 1095, 93 S.W. 2d 1058, wherein this court followed the ruling in Lacks v. Wells, supra.

In the case before us plaintiff was safely discharged upon the public highway and the relationship of passenger and carrier was thereupon terminated.

Plaintiff contends that the aforesaid cases and the rule announced in them, relied on by the defendant, to the effect that once a passenger has alighted he is no longer a passenger, are not applicable to the issues here involved. He points out, that since the defendant's right-of-way was adjacent to the State's right-of-way, the defendant had a right of ingress and egress to its property, and this right of ingress and egress could be used and had to be used by its passengers. We are not impressed with this contention. It must be remembered that the steps on which plaintiff fell were located on the public highway and were not on the property of the defendant. To hold that it is the duty of the defendant to keep in repair all steps, streets, sidewalks and any other facility leading to and from its right-of-way, would be to impose on the defendant an unreasonable and impossible burden. Ordinarily, the duty to keep these facilities in good repair and free from obstructions is imposed upon the municipality or other public body entrusted with their care. Nimmo v. Perkinson Bros. Const. Co., Mo., 85 S.W. 2d 98; Berry v. Emery, Bird, Thayer Dry Goods Co., 357 Mo. 808, 211 S.W. 2d 35.

The only contention made by plaintiff, that commands our attention and is pertinent to the facts in this case, is that the defendant by its positive act in constructing the board barricade, invited and required its passengers to use the steps and having undertaken to do so, it had the duty to warn its passengers of any existing unsafe condition. We are mindful that in most of the cases involving the liability of an inviter to an invitee, the inviter is usually the owner or occupant of the premises containing the agency causing the injury. In this case the defendant was neither owner, nor occupant of the premises on which the steps were built, nor could it be said that it had any control whatever over these steps. Nevertheless, we are of the opinion that its act of building the board barricade constituted an invitation to its passengers to use the steps, and, although not in control of the steps,

used them for its own purposes and may be held liable to any passenger, using due care for his own safety, who is injured thereon by reason of its failure to warn him of any unsafe condition existing on said steps, known to it and not known to the passenger.

In 48 C. J. S. pages 762 and 763, an invitation is defined to be the act, not only of requesting or bidding, but that of alluring or attracting and may include not only express invitation, but the invitation that may be implied from conduct. In 65 C. J. S. page 510, we find the following: "An invitation may be implied from any state of facts on which it naturally and reasonably arises. An invitation may be implied from dedication, enticement, allurement, or inducement to enter, * * * *and it may be manifested by the arrangement of the premises* * * * ." (Emphasis ours.)

In all the Missouri cases cited by plaintiff in support of his contention, wherein a carrier of passengers was involved, the injury occurred while plaintiff was on property belonging to the defendant. The situation in Carleton v. Rockland T. & C. Street Ry., 110 Maine 397, 86 Atlantic 334, is somewhat analogous to the case before us. In that case plaintiff alighted from one of defendant's cars upon a platform and attempted to walk up a flight of three steps connecting the car track with the sidewalk in front of a church she planned to attend. The streetcar line ran alongside of the street nearest the church and upon a level considerably below that of the sidewalk. The bank sloped down to the street and between the foot of the bank and defendant's roadbed there was a ditch. A platform rested on one end of the railway roadbed and extended across the ditch to the bank and connected with the flight of three steps. When plaintiff placed her foot on the first step, the entire flight tipped and caused her to fall. The ownership of the steps was left somewhat in doubt. The court, in finding that defendant's liability was established, had this to say: (86 Atlantic l.c. 335)

"On the whole evidence we think it might fairly be inferred either that the defendant maintained the steps or had negligently weakened their support during the progress of its repairs on the roadbed and ditch, but the decision of this case does not necessarily turn upon either of those findings of facts. The law takes a broader view and asks whether by its own conduct, independent of original ownership or even of subsequent maintenance, the railroad company has, expressly or impliedly, invited the patrons of the road to use the structure * * * . The ownership of the steps cannot be the sole test. * * * The true test is whether the carrier invited its patrons to use the steps. If so a liability exists until the steps are passed."

Our Missouri courts have held an implied invitation is one which is held to be extended by reason of the owner or occupant doing some-

thing or permitting something to be done which fairly indicates to the person entering that his entry and use of the property is consistent with the intentions and purposes of the owner or occupant, and leads him to believe that the use is in accordance with the design for which the place is adapted and allowed to be used in mutuality of interest. Gilliland v. Bondurant, 332 Mo. 881, 59 S.W. 2d 679; Evans v. Sears Roebuck & Co., Mo. App., 104 S.W. 2d 1035; Happy v. Walz, 358 Mo. 56, 213 S.W. 2d 410. The erection of this board barricade by the defendant led passengers to believe that the defendant adopted these steps to its purposes and constituted an invitation to its passengers to use these steps, and we think this is true despite the fact defendant neither owned, nor controlled the premises occupied by the steps. That there was an invitation is practically conceded by plaintiff in his principal instruction. While it is difficult to determine from this instruction the precise theory relied on by plaintiff for recovery, the instruction does require the jury to find "defendant invited plaintiff to use said steps." We think the evidence in this case established the legal relationship of inviter and invitee between defendant and plaintiff respectively.

What duty does this relationship impose on defendant? The "'owner or occupant of land who, by invitation, express or implied, induces or leads others to come upon his premises, for any lawful purpose, is liable in damages to such persons—they using due care—for injuries occasioned by the unsafe condition of the land or its approaches, if such condition was known to him and not to them, and was negligently suffered to exist, without timely notice to the public, or to those who were likely to act upon such invitation.'" Happy v. Walz, 358 Mo. 56, 63, 213 S.W. 2d 410, l.c. 415; Bennett v. L. & N. Railroad Co., 102 U.S. 577, 26 L. Ed. 235; Carleton v. Franconia I. & S. Co., 99 Mass. 216; Vogt v. Wurmb, 318 Mo. 471, 300 S.W. 278; Cameron v. Small, Mo., 182 S.W. 2d 565. In the early case of Vogt v. Wurmb, supra, (l.c. 279) the court recognized the aforesaid rule and quoted the following from 20 R.C.L. 56, par. 52:

"'The mere ownership of land or buildings does not render one liable for injuries sustained by persons who have entered thereon or therein; the owner is not an insurer of such persons, even when he has invited them to enter. Nor is there any presumption of negligence on the part of an owner or occupier merely upon a showing that an injury has been sustained by one while rightfully upon the premises. The true ground of liability is the proprietor's superior·knowledge of the perilous instrumentality and the danger therefrom to persons.going upon the property. It is when the perilous instrumentality is known to the owner or occupant *and not known to the person injured* that a recovery is permitted. * * * And, hence, there is no liability for injuries from dangers

that are obvious, or as well known to the person injured as to the owner or occupant.' '' (Italics ours.)

The text to 20 R.C.L. quoted above is supported by abundant authority and has become well settled in Missouri. Cameron v. Small, supra; Paubel v. Hitz, 339 Mo. 274, 96 S.W. 2d 369; Cash v. Sonken-Galomba Co., 322 Mo. 349, 17 S.W. 2d 927. When we apply the aforesaid principles to the facts of this case, it is obvious that defendant is not liable. The basis of the inviter's liability for injuries sustained by the invitee rests on the inviter's superior knowledge of the danger and the one extending the invitation is not liable for an injury to an invitee resulting from a danger which was obvious and as well known to the invitee as to the inviter. In order to hold the defendant liable in this case, it is necessary for the plaintiff to show that the dangerous condition he complains of was known to defendant or should have been known to it, and was not known to him. The true ground of liability is the defendant's superior knowledge of the danger, which is not known to the plaintiff. The evidence in this case shows that plaintiff was fully aware of the condition of these steps, for he testified as follows:

"Q. Had you gone up those steps that morning?

"A. Yes.

"Q. Did you have the opportunity to observe the steps at that time?

"A. At that time, yes.

"Q. And based upon that observation, and your daily observation for a period of years, what can you tell his Honor and ladies and gentlemen of the jury about the condition of those steps?

\* \* \* \*

"The Witness: The steps were full that morning of mud, dirt and ice."

His testimony clearly shows that there was no danger or peril unknown to him that caused his injury. In Paubel v. Hitz, supra, defendant was engaged in the commission business within what was known as "Commission Row District" in St. Louis, Missouri. The only means of ingress and egress from the sidewalk to defendant's place of business was a permanent runway which was higher at the doorway then at the sidewalk line. Defendant used this runway to hand-truck the poultry and other farm products purchased and sold into and out of his place of business and "manure and chicken dirt" and other substances would drop onto the runway. This required the cleaning of the runway quite frequently during the day time and the use of sawdust or ashes to make it easy to walk on and keep from slipping. Plaintiff was a United States postman at the time of the accident and had covered "Commission Row District" many years. He was familiar with all the entrances and practically all of the commission

companies had the same kind of a runway as defendant and used it for the same purpose as defendant. He had been delivering mail to the defendant's place of business for about a year prior to the accident and knew that there was always something on defendant's runway. He noticed the condition of the runway when he went in and saw that it was slippery and wet and full of manure and chicken dirt. After he had delivered the mail and started out of the door, his feet slipped from under him and he fell sustaining injuries. The Supreme Court in reversing a judgment in favor of the plaintiff in the Paubel case said: (96 S.W. 2d, l.c. 373, 374)

"No hidden, lurking, or secret peril is involved. Whatever danger existed was not only obvious but actually known and appreciated by plaintiff. He possessed all the information concerning the physical condition of the runway possessed by defendant or his employees, and knew of and appreciated the care required to use the runway. Had he been warned of the slippery condition of the runway, no greater information would have been imparted to him than that which he admittedly possessed. A warning imparting notice of the condition of the runway would have discharged defendant's legal obligation. Therefore, whatever risk existed incident to passage over the runway was voluntarily incurred by plaintiff * * * and defendant breached no legal obligation owed plaintiff."

The facts in the instant case parallel the facts in the Paubel case. The plaintiff in the instant case assumed all the risks attendant on the use of the steps. A warning to plaintiff not to use the steps or a notice of their condition was unnecessary because of the obviousness of the situation. It would only be telling plaintiff what he already knew. The condition of these steps "full of mud, dirt and ice" was as well, if not better, known to plaintiff than to defendant and their dangerous condition was as reasonably to be apprehended by the plaintiff as by the defendant.

In view of the facts and the law of this state in cases of like character, the trial court should have sustained defendant's motion for a directed verdict. Therefore, the judgment against defendant must be reversed. It is so ordered. *Bennick, P. J.*, and *Anderson, J.*, concur.