[No. 20100. Department Two. March 7, 1927.]

A. J. LINDGREN, *Respondent*, v. PUGET SOUND INTER-
NATIONAL RAILWAY & POWER COMPANY,
*Appellant.*[1]

[1] CARRIERS (60-5, 80)—PASSENGERS—TERMINATION OF RELATION—
SETTING DOWN PASSENGERS—NEGLIGENCE. One who in the day
time alights from a street car overrunning, by forty feet, its
usual stopping place at a familiar corner, with full opportunity
to see and avoid approaching automobiles, ceases to be a
passenger upon alighting, and the company owes him no further
duty, there being no inherent danger calling for special care
with reference to the safety of passengers alighting at that
place; and the company is therefore not liable to him for
injuries sustained when he walked some steps almost across
the path of an automobile, passing under the impression that
the street car would not stop at the intersection.

Appeal from a judgment of the superior court for Snohomish county, Bell, J., entered May 10, 1926, upon the verdict of a jury rendered in favor of the plaintiff, in an action for personal injuries sustained upon alighting from a street car. Reversed.

[1]Reported in 253 Pac. 791.

*J. A. Coleman* and *Clarence J. Coleman,* for appellant.

*Douglas T. Ballinger,* for respondent.

PARKER, J.—The plaintiff, Lindgren, commenced this action in the superior court for Snohomish county seeking recovery of damages claimed to have been suffered by him as the result of the negligent operation of a street car of the defendant company, concurring with the negligent driving of an automobile by the servant of other defendants. A trial upon the merits in that court sitting with a jury resulted in verdict and judgment awarding to Lindgren recovery in the sum of $2,950 against all the defendants, from which the defendant company alone has appealed to this court.

The case was prosecuted, and manifestly the jury found against the company, upon the theory that its servant, the motorman, negligently stopped the car for Lindgren to alight therefrom at a point other than at its usual stopping place, resulting in Lindgren, without fault on his part, passing from the car over the westerly paved portion of the street, and, while thereon, being struck by the oncoming automobile, and thus receiving the injuries for which he seeks recovery. By motion made at the conclusion of the introduction of the evidence and by motion for judgment notwithstanding the verdict made after the rendering of the verdict, counsel for the company challenged the sufficiency of the evidence to support any recovery against it, asking the court to so decide as a matter of law and render judgment accordingly absolving it from liability. The contention here made in behalf of the company is that the trial court erred in overruling these motions.

There is practically no conflict in the evidence other than as to where the street car was stopped at the time

in question with reference to its usual stopping place at or near the northerly pedestrian crossing of the street intersection. The avenue or street known as Broadway in the city of Everett runs north and south and is intersected at right angles by Twenty-third street running east and west. Broadway is one hundred feet wide, with a paved roadway sixty feet wide between curbs. The west rail of the street car track on Broadway is twenty-two feet from the west curb of the paved roadway which is practically level. Twenty-third street is eighty feet wide with a roadway forty feet wide between curbs. The car in question was forty-four feet long.

Lindgren was a passenger on the car as it proceeded southerly along the track on Broadway late in the afternoon of the day in question while it was full daylight. His intention was to alight from the car upon its arrival at Twenty-third street, as he had done many times. He was well acquainted with the locality. It was the custom of the company to stop its south-bound cars at or very near the northerly side of the Twenty-third street intersection for the alighting of passengers, though there was no law or ordinance regulation requiring it so to do. A short time before the car reached Twenty-third street, Lindgren gave the usual signal to the motorman indicating his desire to have the car stop at Twenty-third street. We shall assume this signal was given in time to enable the motorman to stop the car at the usual stopping place at Twenty-third street. The evidence does not tell us the exact usual stopping place of the car, but it is evident that it was as far south as possible so as to avoid interference with the north pedestrian crossing of the intersection. The evidence is in conflict as to just where, on this occasion, the car was stopped by the motorman and the door opened by

him for Lindgren to alight therefrom. We shall assume, as there was some evidence tending to show, that the car was stopped so that its front end was very near the center line of Twenty-third street, though there was also positive evidence that the car stopped at its usual stopping place. So the car proceeded not more than approximately forty feet past the usual stopping place.

When the car was stopped with its front end near the center line of Twenty-third street and the door opened by the motorman, Lindgren stepped out and down from the front end onto the pavement, and, proceeding westerly across the paved roadway, having taken two or three steps, he was struck by the westerly front fender of the automobile being driven southerly by the servant of the other defendants; that is, he had passed nearly clear across the path of the oncoming automobile before being struck. There was nothing there to obstruct the view of Lindgren in the least impairing his opportunity to see where the car had stopped or to see that he was alighting therefrom near the center of the intersection of Twenty-third street, or in the least impairing his opportunity to see the approach of any automobiles from the north, which, of course, was the only direction from which he had any reason to look for the approach of automobiles or other roadway traffic, since the northerly bound roadway traffic would necessarily be on the paved portion of the roadway east of the car track.

The driver of the automobile testified that he was induced to proceed, driving past the street car, because, it not having stopped at its usual stopping place, he assumed that it was not going to stop at all. This is relied upon by counsel for Lindgren as the motorman's negligence and as one of the concurring proximate causes of the injuries suffered by him.

There is no claim made here that there was in force

in the city of Everett, either at the place in question or elsewhere, any law or ordinance against so-called "jay-walking"; that is, making it in any sense unlawful for pedestrians to cross the paved roadway at places other than pedestrian crossings.   So there is no room for arguing that the stopping of the car other than at the usual place was any inducement by the motorman for Lindgren to violate any law or ordinance regulation. This summary of what we conceive to be the controlling facts is as favorable to the support of the verdict and judgment as it is possible to make from the evidence in this case.

[1]   Our problem is as to how far did the company's duty of protection or warning follow Lindgren from the door of the car upon his alighting therefrom upon the paved roadway.   It seems to be conceded by his counsel—indeed, the law seems well settled—that such duty would have ceased immediately upon his being securely off the car and upon the paved roadway had the car stopped and he alighted therefrom when its front door was at the north pedestrian crossing of the intersection, because that was the usual place of stopping the car. Did the stopping of the car only forty feet farther to the south substantially enhance the degree of the company's required duty of protection and warning to Lindgren when he alighted from the car at that place? We think not, and that it must be so held as a matter of law, in view of Lindgren's admitted familiarity with the intersection and all its surroundings and his unimpaired opportunity to see and be fully advised of exactly where he was alighting and the approach of any automobile or other vehicle from the north.   There was admittedly no defect in the pavement at the place where he alighted.   Indeed, it was exactly the same in char-

acter as it was forty feet farther north at the usual stopping place of the car.

In *Welsh v. Spokane & Inland Empire R. Co.,* 91 Wash. 260, 157 Pac. 679, involving an accident to a passenger immediately after leaving an interurban car upon a street in Spokane, Judge Ellis, speaking for the court, said:

"The rule applicable to street cars governs in determining when the relation of carrier and passenger ends as to one alighting in a street from an interurban train. In the absence of any unusual inherent danger, defect or obstruction in the place of alighting, that relation ceases upon the alighting passenger gaining a secure and maintainable footing upon the street."

This rule we conceive to be applicable to practically all cases of passengers alighting from street or interurban cars upon public streets, unless there be present, where such stopping is made, some particular inherent danger calling for special care on the part of the operator of the street or interurban car with reference to the safety of passengers alighting therefrom. An example of the necessity of such special care is found in *Henry v. Grant Street Electric R. Co.,* 24 Wash. 246, 64 Pac. 137, which had to do with the stopping of a street car which had failed to stop at a platform and proceeded past it a short distance, stopping upon an open trestle in the dark of the night, thus causing a passenger to alight and fall several feet to the ground. We think, under the admitted and undisputed facts here shown, that Lindgren ceased to be a passenger and ceased entirely to be under the protection of the company immediately upon his acquiring a secure footing off the car upon the level pavement of the roadway, after which time he passed nearly entirely across the path of the oncoming automobile and was struck by it. There has not come to our attention any decision that

fits exactly the facts of this particular case, but we think our conclusion finds strong support in *Chesley v. Waterloo, C. F. & N. R. Co.*, 188 Iowa 1004, 176 N. W. 961, 12 A. L. R. 1366; *Jacobson v. Omaha & C. B. Street R. Co.*, 109 Neb. 356, 191 N. W. 327, 31 A. L. R. 563; 4 R. C. L. 1047.

We conclude that the trial court erred in refusing to absolve the company from liability as a matter of law. Therefore, the judgment must be reversed with directions to dismiss the action. It is so ordered.

MACKINTOSH, C. J., TOLMAN, BRIDGES, and ASKREN, JJ., concur.