[No. 23228. *En Banc.* February 9, 1932.]

Louis Gottstein, *Respondent*, v. Edmund P. Daly
et al., *Appellants*.[1]

*J. Speed Smith* and *Henry Elliott, Jr.,* for appel-
lants.

*John J. Sullivan, M. A. Lurie,* and *Everett O. Butts*
(*A. Seijas,* of counsel), for respondent.

Millard, J.—Alleging that he was struck by a taxi-
cab owned by the Red Top Cab Company and the Con-
solidated Cab Company, thereby sustaining personal
injuries, the plaintiff instituted this action against the
driver of the taxicab and against the receiver for the
taxicab companies to recover for the injuries suffered.
Defendants' motions (made at the close of plaintiff's
case and at the conclusion of the taking of the evi-
dence) for judgment, upon the ground that plaintiff's
contributory negligence barred recovery, were denied.

[1]Reported in 7 P. (2d) 610.

The jury returned a verdict for seven thousand dollars in favor of the plaintiff. From the judgment entered on the verdict, motions for judgment notwithstanding the verdict and for a new trial having been overruled, the defendants appealed.

Counsel for appellants contend that respondent's negligence contributed to his injury to such a degree as to require the court to hold, as a matter of law, that it barred respondent's right to a recovery.

Counsel for respondent invoke the rule that, ordinarily, the question of contributory negligence is one for the jury.

"Ordinarily, the question of contributory negligence is for the jury. A court will determine the question only when but one reasonable conclusion can be reached from a given state of facts." *Lawe v. Seattle,* 163 Wash. 362, 1 P. (2d) 237.

Do the facts warrant the application of the exception to the rule requiring the submitting to the jury of the question of contributory negligence? If the question were one of conflict of evidence, we would not disturb the verdict. The evidence in behalf of respondent shows that the respondent alighted from the north side of a cable car on Yesler way; that he went to the east or rear end of the car, and, without looking for approaching vehicles, which, as of right, could use the south side of Yesler way when proceeding eastward, walked either into the path of, or collided with the side of, an oncoming taxicab which was rightly proceeding eastward on the south side of Yesler way.

It may be conceded that the taxicab operator, though proceeding through the green light, was negligent in operating his car at an excessive speed, in failing to give warning to any persons who might be crossing to the south side of Yesler way, and in driving too close to the south side of the cable car. However, the

facts, summarized as follows, manifestly present a situation where the contributory negligence of the injured party was the proximate cause of his injuries; and the trial court erred in not holding, as a matter of law, that the complaining party's right to a recovery was thereby barred.

The accident happened the morning of October 11, 1929, in the city of Seattle, near the southeast corner of Yesler way and Prefontaine place. The course of Yesler way, which extends from lake Washington to Pioneer square, is east and west. A street car cable line traverses Yesler way from the east side of the intersecting Third avenue to lake Washington.

The course of Third avenue is from the northwest to the southeast until it intersects Yesler way. The direction of Third avenue is southward from the south side of Yesler way, and is then designated Third avenue south.

Prefontaine place, though it appears to be, is not a continuation of Third avenue. It is about one block in length, commences on the south side of Yesler way, and proceeds in a southeasterly direction. It lies between Third and Fourth avenues south. That is, at its northwest place of beginning, Prefontaine place intersects Yesler way and Third avenue; and at its extreme southeasterly end, Prefontaine place intersects Fourth avenue south and another street one block south of and parallel with Yesler way.

Dilling way, which is less than a block in length, lies north of Yesler way between Third and Fourth avenues. Its course is from the northeast, where it intersects Fourth avenue, to the southwest, where it intersects Yesler way.

The west terminus of the Yesler cable line is at the east side of Third avenue. The south rail of the street car track is twelve to fourteen feet from the south

street curb of Yesler way. In approximately the middle of Yesler way is a concrete loading platform, erected by the city of Seattle, where the cable car stops for debarking and embarking passengers. The platform is on the north side of the Yesler way cable line. All passengers are required to depart from the cable cars on the north side of Yesler way at this terminus. It does not appear that passengers, when the cable car is east bound, are permitted to board the cable car from the south side of the cable car. Traffic on Yesler way and Third avenue is stopped and released by an automatic electric signalling device located in the center of the intersection of Third avenue and Yesler way. The green light gives permission to proceed in the direction in which it is shown.

Respondent became a resident of Seattle in 1902. Since then, he has many times traveled as a passenger on the Yesler way cable line to Third avenue, and at that point transferred to street cars going north on Third avenue to his place of work at 1415 Third avenue. On the morning of October 11, 1929, he rode on the Yesler way cable line to Third avenue. He stepped from the cable car on the north side, passed around the rear or east end of the car, then, without looking, took two steps to the south and collided with or was struck by appellants' taxicab, which had crossed the intersection with the green light and was proceeding east on Yesler way between the cable car and the south street curb of Yesler way.

Respondent testified that he rode on the cable car to Third avenue; that two passengers got off in front of him at the rear door on the north side of the car; that he walked from the door to the rear end of the car, turned and walked toward the sidewalk on the south side of Yesler way; that he took about two steps, when

he saw an approaching automobile, which struck him, as he did not then have time to escape. That he did not look before stepping into the eastbound traffic is clear from his testimony, as follows:

"Q. Did you get off the front end or the rear portion of the car? A. The rear portion of the car. Q. On the north side? A. Yes, sir. Q. And then what did you do? A. Naturally the nearest way to go from the end of the door to the end of the car, and kept on walking. Q. To the rear or to the front of the car? A. The rear end of the car. Q. Go ahead, what did you do then? A. Then I turned and walked toward the sidewalk. Q. That is the sidewalk on the south side of Yesler? A. On the south side of the street, and I stepped about two steps or so, and I seen an automobile coming, and I seen the automobile coming, and I pulled myself back with my right foot, and I got hit on the left foot. Q. Immediately you passed the end of the street car, so you were out in the open, in the portion of the street devoted to vehicular traffic going east on Yesler, what did you do toward looking, if anything? A. I looked to my right, and saw that automobile coming, and I pulled myself back, and got hit on the left foot . . . Q. As I understood you, when you were answering questions for your lawyer, you said you walked out from behind this car, and had taken about one or two steps? A. Yes, sir. Q. And you were in that position then when you first looked to your right to see if a car was coming? A. Yes, sir. Q. You did not look until that time? A. Not until I got out in the clear. Q. Until you had taken two steps out you did not look? A. No, sir. Q. When you did look to your right, the automobile was so close to you you could not get out of its way, is that right? A. I pulled myself back, tried to. Q. But it was so close to you you could not get out of its way? A. No. Q. Now when you saw this car you kind of put your hands out? A. I did not. I pulled myself back. I pulled my foot back and it caught my left foot. Q. You were unable to get all of your body back away from that car? A. Yes, sir. Q. Did you look the instant you took the

two steps out? A. I looked right as I was in the clear. Q. As soon as you had taken two steps you looked? A. Yes, sir. Q. And tried to get back, but you could not quite make it? A. No. . . . Q. I will put it this way. When you first saw the car you were then in such a position that you could not . . . A. Pull back. Q. Pull back. You struck the side of the automobile, did you not? A. No, sir, I did not. I pulled my whole body back. Q. Did the front end of the automobile hit you? A. I think it did, but I couldn't tell; it was going so fast.''

One of respondent's witnesses testified that she alighted from the rear end of the car, and went around the east or rear end of the car to get to the south side of Yesler way. As she got to the edge of. the cable car, she stopped; but the respondent hastened past her and was struck by the taxicab, which could not be seen by a person until such person had cleared the cable car.

The cable car conductor, another of respondent's witnesses, testified that passengers are let on and off the north side of the car at this the westerly terminus of the line; that some of the debarking passengers go around the front or west end of the car, while others proceed around the rear or east end of the car to get to the sidewalk on the south side of Yesler way. He heard the brakes of the taxicab squeak before all of the passengers had departed from the car, and while he was facing west. He did not hear or see the taxicab prior to that time. He looked around towards the east end of the cable car and saw respondent attempting to get out of the way of an automobile. Respondent was three to five feet south of the south rail of the car line when he was hit or fell.

The cable car motorman, also a witness for the respondent, testified that; after the cable car stopped, he opened the west gate on the north side; that some of

the passengers had departed from the car when the accident occurred. As the cable car came to a stop, he observed two or three automobiles rushing east on Yesler way. He thought the traffic signal bell had just permitted the traffic to go through the intersection in that direction. His attention was attracted by the cable car conductor, and he stepped to the east end of the car and saw a man lying on the pavement near a taxicab.

Insisting that there was a separate cross-walk to the east of the street car, which was not governed by the traffic light, and which was distinct and separate from the intersection, counsel for respondent argue:

"The northern boundary of Yesler way does not continue down to the intersection of Third avenue, but stops at the point where it meets Dilling way. In approximately the middle of the intersection, which includes the northern boundary of Dilling way and the southern boundary of Yesler way, there has been placed a loading platform for the use of passengers getting on and off the Yesler cable car. A line projected from the sidewalk which exists at the intersection of Dilling way and Yesler way southerly to the intersection of Yesler way and Prefontaine place, would run just to the east of the aforesaid loading platform, and forms, and is, *a natural cross-walk from the intersection* of Dilling way and Yesler way to what is referred to in the evidence as the Rex drug store located at the intersection of Yesler way and Prefontaine place. A pedestrian attempting to cross Yesler way from Dilling way would automatically follow this cross-walk, and a passenger leaving the Yesler way street car from the rear end and attempting to go around the rear end of this street car would automatically find himself in the path of this regular cross-walk. The cross-walk so formed is not governed by any stop signal whatsoever. There is also a cross-walk extending from the southerly end of Yesler way as it intersects Prefontaine place and northerly across Yesler way and Dilling way to Third avenue. A

pedestrian leaving a Yesler way cable car and going around the front end would reach the last mentioned cross-walk, and go either to the north or south. The shortest and most practicable route for passengers leaving the street car to reach the southerly curb of Yesler way is to go around the rear of the street car to the cross-walk first above mentioned and thence to the southerly curb of Yesler way. This was the route taken by Mr. Gottstein.''

Respondent's witness, a traffic engineer of the city, testified that no marks were placed at the east end of the street car for pedestrians to walk across and to the south side of Yesler way; that never, to his knowledge, had any been there; that marks had been placed at the intersection for pedestrians to walk around in front of the car, the west end; that, at this intersection, there is a traffic light, and that the white lines go clear across Yesler way and Dilling way. The testimony, as follows, of this witness completely refutes the argument that there was a separate cross-walk to the east of the street car which was not governed by the traffic light:

''Q. You have marks there for pedestrians to come around the front of the car, to follow, do you not? A. The intersection is marked out, in connection with the traffic signal, to give them a definite place to walk, and to concentrate people into one definite line. Q. And handing you defendant's exhibit '1' that is your marking there at Yesler way at the present time, is it not, and it has been for a long time? A. Yes, sir. Q. You see this street car standing here at Yesler way. I will ask you whether . . . this is the west end of the car, and the east end is up this way? A. Yes, sir. Q. And you have got at the east end of that car white marks coming across to the south side of Yesler, indicating that pedestrians are to walk across there? A. No, sir. Q. And you haven't had any there? A. Not to my knowledge. Q. If that was a place where you, as head of the traffic department, wanted people to walk, directly from the east end of that car, to the south

sidewalk, it would have been marked? MR. SULLIVAN: I object to the form of question. It is not a question of whether he wanted them to walk there, but it is a question of legal right. THE COURT: This is cross-examination, and it is a peculiar crossing, you all admit; let him answer. A. What is the question? Q. (MR. SMITH): If you, as head of the traffic department, wanted people leaving this street car to go to the south curb of Yesler way, if you wanted them to walk to the east end of that street car, directly to the south curb, would you have marked it, instead of marking it to have them come this way? (indicating on exhibit 1). A. Not necessarily. It is the privilege of the pedestrian to walk at any intersection. It was our thought, as people getting off the Yesler way cars, a great many of them, used to walk in most any direction, to try to concentrate them, so when they went by the signal they would go in one line, but it was not an endeavor to prevent their using any other part of the intersection where they had a right to walk. Q. These markings are not to prohibit people from walking at other places? A. We want to make it clear where they should walk. Q. But your markings are put there as a guide to the pedestrian, that there is the place for him to walk? A. Yes, sir. Q. And that you consider is the best place for him to walk, with reference to safety, with reference to convenience to traffic? A. Well, I do not know that that statement is a right one. Q. I would like to ask you a little bit about that. I take it in directing traffic you have but two purposes; one to keep traffic moving, and the other is to safeguard the citizens of this community? A. Yes, sir. Q. Now, when you designate those crossings to pedestrians, it is all by reason of automobiles that you have had to take these steps? A. Yes, sir. Q. When you make marks on the street, indicating to pedestrians where they should walk, you have in mind two thoughts, first, to keep the traffic moving, and to provide a place where, in your judgment, there would be more safety for the pedestrians, is that right? A. Yes, sir.''

It must be borne in mind that the taxi driver had a right to pass between the south side of the cable car and the south curb of Yesler way in driving east on Yesler way. He was moving with the green light. The respondent, when he started across Yesler way towards the south curb, went against the red traffic light, in violation of the city ordinance. That constituted negligence on his part. The city ordinance provides that pedestrians, while boarding or leaving street cars, shall have the right of way over vehicles at street intersections and crossings except at intersections where an automatic signal is located; that, at such intersections, the pedestrian shall proceed in the direction of the signal when green, and shall not proceed in the direction of the signal when red.

"These traffic signals are operated for the safety and protection of those who inhabit and use the streets. They are to help—not to hinder traffic. The city ordinance regulating traffic at crossings where these signals are used prohibits an entrance into a street crossing, except on a green signal. Plaintiff violated the ordinance, and it is generally held that a violation of the traffic regulations of a municipality, so far as they embody express commands, is negligence per se." *Buckley v. Featherstone Garage, Inc.*, 11 La. App. 564, 123 South. 446.

The respondent is not entitled to a recovery. He did not exercise the care of an ordinarily prudent man in stepping, without looking, from behind such an obstruction as a cable car into the way of traffic. *Jones v. Florios,* 248 Mich. 153, 226 N. W. 852; *Di Stephano v. Smith,* 102 Atl. (R. I.) 817. We have repeatedly held that where, like the case at bar, one passes from behind or in front of an object and steps into the pathway of an approaching vehicle without taking any precaution for his own safety, such person is guilty of contributory negligence.

"For a much stronger reason, when she walked out from behind the express wagon where she could not see approaching vehicles, and where drivers thereof could not see her, and where she knew that vehicles were likely to approach, it was her plain duty, in the exercise of ordinary care in emerging therefrom, to look in the direction she was going. If she had done this, she would have seen the defendant and no doubt have avoided the injury. Her own negligence prevents her recovery, even though the auto was being driven at the rate of twenty-five miles per hour." *Harder v. Matthews*, 67 Wash. 487, 121 Pac. 983.

Respondent was familiar with traffic conditions at this intersection. For many years he had traveled on the Yesler way cable line and transferred at Yesler way and Third avenue to a northbound car. He knew that a traffic light was at this intersection. He knew that he should not proceed from the safety zone, the concrete platform, to the south side of Yesler way until traffic was released in that direction. He knew, though many disregarded, as did he, the lines of the crosswalk indicated he should proceed at the west or front end of the car to the south curb of Yesler way. Yet, regardless of traffic regulations and heedless of his own safety, he, without a glance to see whether the way was clear, stepped into the path of vehicular traffic which was rightly proceeding eastward with the green light.

Another case in point is *Jones v. Seattle*, 144 Wash. 188, 257 Pac. 393. There the deceased left a street car on a street which was paved only on the right side of the street car. Automobile traffic in both directions was limited to that side of the street. The street car stopped. An automobile was approaching from the opposite direction. Mr. Jones alighted, and when about two-thirds of the way across the paving towards

the sidewalk was struck by the automobile. We said, as to the contributory negligence of Mr. Jones:

"But assuming, without deciding, that the question of the operator's negligence was for the jury, there is still left the question of the contributory negligence to be determined upon the testimony most favorable to respondent. Taking, then, that testimony as true, may reasonable minds differ in determining that Jones had full knowledge of the street and traffic conditions; that he had an unobstructed opportunity to see all that the operator of the car could have seen, and that which other passengers, not alighting and whose personal safety was not involved, did see? That he voluntarily alighted in broad daylight, without taking the slightest precaution as to the traffic on the street, and that therefore he was guilty of negligence which proximately caused, or contributed to, the injury. Our recent case of *Lindgren v. Puget Sound International R. & Power Co.*, 142 Wash. 546, 253 Pac. 791, while perhaps not strictly in point, displays a line of reasoning that leads to the answer which we must here give, and that is that, upon the undisputed evidence most favorable to respondent, the deceased was, as a matter of law, guilty of contributory negligence which bars a recovery."

In *Stueding v. Seattle Elec. Co.*, 71 Wash. 476, 128 Pac. 1058, a pedestrian approached a street car crossing where a car was unloading passengers, with an unobstructed view of the far track where he could have seen an approaching car. So, too, the respondent could have seen approaching traffic from the west had he proceeded to the front of the car as he should have done. The plaintiff did not look in that direction until near the standing car which, as in the case at bar, obstructed the pedestrian's view. He walked rapidly, as did the respondent, behind the standing car without stopping to look, the negligence of which respondent was guilty, and was struck by the side or front of a car passing on the other track. We held in that case,

which is on all fours with the case at bar, that the pedestrian's contributory negligence precluded recovery, as a matter of law, notwithstanding the negligence on the part of the company in excessive speed. We said:

"Common prudence demanded that the respondent should take his observations at a point where his vision was not restricted, and that if he failed to do so he should not pass behind the standing car and enter the zone of danger without using his senses to ascertain whether there was an approaching car upon the west track."

In *Woodruff v. Seattle,* 141 Wash. 360, 251 Pac. 559, it was held that a passenger alighting from a street car is guilty of contributory negligence, as a matter of law, in walking back around the rear of the car upon the tracks of a parallel line, and colliding with a passing car without having stopped to look or take any precaution.

*Wright v. Zido,* 151 Wash. 486, 276 Pac. 542, upon which respondent relies, is distinguishable from the case at bar. The safety zone in which the plaintiff alighted was seventy-five feet back from the intersection. The automobile was traveling in the same direction as the street car, and was passing the street car on the right-hand side of the street car, the side from which the plaintiff alighted. The plaintiff did not in that case, as did the respondent in the case at bar, walk around a standing street car and without having stopped to look or take any precaution, walk into the path of vehicular traffic. We there said:

"Section 109 of the traffic ordinance No. 53223 of the city provides:

" 'When overtaking or passing a street car on its right-hand side, a driver of a vehicle shall bring such vehicle to a full stop before passing over or by any place where a street car is stopping or stopped, and

shall not proceed when persons are getting on or off, or about to get on or get off said street car, unless said driver can maintain a distance of at least six feet between said vehicle and the running board or lower step of such street car.' . . .

"In our opinion this section of the ordinance requires the driver of a vehicle passing a street car on the right-hand side to bring the vehicle to a full stop before passing over or by any place where a street car is stopped; and that, after such full stop, the driver shall not proceed when persons are getting on or off or about to get on or off the street car unless the driver of the vehicle can maintain a distance of at least six feet between the vehicle and the running board or lower step of the street car. The ordinance requires that the vehicle be stopped."

The ordinance requires an automobile passing a street car on its right-hand side to come to a full stop. The ordinance does not apply in the case at bar, as the taxicab was passing the cable car on its left-hand side by permission of the green light.

"So, under a statute or ordinance requiring automobiles to stop in the rear of street cars which are headed in the same direction and have stopped to discharge or receive passengers, it is not negligence per se for the driver of an automobile to fail to stop because of a street car, headed in the opposite direction from that of the automobile, stopping to take on or discharge passengers." Blashfield's Cyc. Automobile Laws, Vol. 1, p. 673.

See, also, *Walters v. Evick,* 93 Cal. App. 1, 268 Pac. 1061, and *Carey v. Guest,* 258 Pac. (Mont.) 236.

In *Wright v. Zido, supra,* it was held that the ordinance,

"At intersections where traffic officers are on duty, or an automobile traffic signal is located, pedestrians shall cross the street with the released traffic and not otherwise,"

did not apply; that the plaintiff was not a pedestrian crossing the intersection.

In the case at bar, the respondent was at the intersection, and the ordinance prohibiting pedestrians at intersections controlled by traffic signals from crossing until traffic was released, applies. As we said in *Wright v. Zido, supra:*

"Section 50 is evidently intended to take care of pedestrians immediately on intersections by having them cross only with released traffic, that is, on two parallel sides rather than all four sides of the intersection at the same time."

We have examined all of the authorities cited, and find them either not out of harmony with the views herein expressed, or distinguishable on the facts from the case at bar.

The judgment is reversed, and the cause remanded with directions to dismiss the action.

PARKER, MAIN, MITCHELL, and BEALS, JJ., concur.

HERMAN, J. (dissenting)—I dissent. A study of the geography, as disclosed by the testimony, convinces me that the traffic light referred to in the majority opinion was not operated for the purpose of controlling the traffic on the cross-walk being used by respondent in going from the east bound street car to the south sidewalk. In my opinion, the street car was east bound, for it was at the extreme west end of the line waiting to start to the east, that is, the other end of the line. It had completed its trip west and was waiting to go to the east end of the line.

I concede that, if the traffic light in question governed traffic on the cross-walk where the accident occurred, it would be negligence per se for a pedestrian to leave the safety zone for the south sidewalk before traffic in that direction was released. While no useful

purpose will be served by detailing the evidence in a dissenting opinion, I am persuaded that, if I be correct in my theory that the traffic light was not operated to control traffic on the cross-walk where respondent was injured, the acts of respondent were not so palpably negligent that there can be no two opinions concerning them in the minds of reasonable men. I am of the view that the trial court did not err in submitting the cause to the jury.

TOLMAN, C. J., HOLCOMB, and BEELER, JJ., concur with HERMAN, J.