PETER JACOBSON, ADMINISTRATOR, APPELLANT, V. OMAHA & COUNCIL BLUFFS STREET RAILWAY COMPANY, APPELLEE.

FILED DECEMBER 8, 1922. No. 22147.

1. Carriers: DUTY TO PASSENGERS. The rule requiring a street railway company to furnish the passenger a safe place to alight upon the street does not require it to protect all passengers at such place against independent agencies operating in the street.

2. ———: ———. A street railway company, carrying passengers on city streets, is not, as a general rule, bound to provide means for warning passengers, about to alight from its cars upon the street, of the danger from passing vehicles, that being an ob-

vious danger, incidental to the street, and a condition over which the carrier has no control.

3. ——: ——: EXCEPTIONS. The rule is not held to be an inflexible one, not subject to exceptions in the case of children or in the case of persons not apparently possessed of normal faculties for protecting themselves, or where a person of normal faculties actually is known by the employee to be about to incur a danger in alighting of which the employee knows the passenger is unaware.

4. ——: ——. The company must give the passenger a reasonable opportunity to select his time to alight and to direct his own progress, having regard for his own protection and safety, and must not influence or compel him to alight so as to cause him to be placed in way of danger from passing vehicles.

5. ——: ——. TERMINATION OF RELATION. A street car passenger who alights at his destination upon the street becomes a pedestrian upon the street, and the street railway company is not bound to guard or protect him in his progress on the street from the place where he alights.

6. ——: ——: ——. But the rule is not so strict as to hold that a passenger, so alighting, ceases to be a passenger the instant that he alights upon the ground.

APPEAL from the district court for Douglas county: CHARLES LESLIE, JUDGE. *Affirmed.*

*John O. Yeiser* and *E. A. Conaway,* for appellant.

*John L. Webster, contra.*

Heard before MORRISSEY, C. J., LETTON, ALDRICH, DAY and FLANSBURG, JJ., REDICK, District Judge.

FLANSBURG, J.

This was an action brought by plaintiff as administrator of the estate of Anna Pauline Jensen, deceased, to recover damages from the defendant Omaha & Council Bluffs Street Railway Company, on the charge that the defendant company had, through its negligence, caused the death of plaintiff's intestate while, it is claimed, she sustained the relation to it of a passenger. The deceased sustained the injuries, of which she died, from a motorcycle, which passed the defendant's street car and struck

her immediately after she had alighted in the street, at the termination of her journey. The defendant contends, first, that it was guilty of no negligence; and, second, that at the time the accident happened the relation of carrier and passenger had ceased to exist, and that the company owed the deceased no duty of protection from passing vehicles. The trial court directed a verdict in favor of the defendant, and from a judgment on that verdict the plaintiff appeals.

There is testimony in behalf of the plaintiff to show the following facts: Anna Pauline Jensen, a young woman, was a passenger on a street car operated by the defendant company. The car was proceeding south on Thirteenth street in the city of Omaha. A signal was given for the car to stop at a street intersection, a regular stopping place. Miss Jensen went forward to the front end of the car, stepped down into the front vestibule, and, as soon as the car stopped and the door opened, she stepped on down into the street. She was immediately followed by another passenger who stepped down close behind or beside her and was in the street at the time of the accident. As Miss Jensen descended from the car, she took one long step out onto the pavement, and was just in the act of swinging her other foot forward, to take another step, when she was struck by a motorcycle which was just then passing close to the car at a great speed. The motorman of the street car did not see the motorcycle until after the accident had happened, though by looking in a small mirror, so arranged that he had a view of the outside of the car and of the rear entrance, it may have been that, had he looked for it, he could have seen the motorcycle as it approached. The conductor, however, stationed at the rear end of the car, had noticed the man on the motorcycle when he was some two blocks distant behind the car, and had remarked to the passengers near him that the man was approaching at a high speed. Different witnesses fixed the speed of the motorcyclist at from 40 to 60 miles an hour,

and the motorcyclist himself testified that he passed the car at the rate of 42 miles an hour and probably not more than two feet distant from it. He was engaged at that time in the police service of the city of Omaha and was attempting to overtake a speeding automobile.

Plaintiff contends that the street railway company was negligent in having failed to discover and to warn Miss Jensen of the approaching vehicle. The defendant, on the other hand, contends that it was not the duty of the street railway company to watch for such vehicles; that those were obvious dangers, at all times more or less present upon the street, and dangers which the passenger must, himself, take notice of. The defendant further urges that at the first moment Miss Jensen stood upon the pavement, after descending from the car, she ceased to be a passenger, and from that instant, whatever may have happened to her, the company can be held to no responsibility, growing out of any duty it owed her as a carrier.

A long list of cases is cited by the defendant to show that a person alighting from a street car ceases to be a passenger after he alights and moves away from the place of his landing. *Chesley v. Waterloo, C. F. & N. R. Co.*, 188 Ia. 1004, 12 A. L. R. 1366; *Hammett v. Birmingham R., L. & P. Co.*, 202 Ala. 520; *Morris v. Omaha & C. B. Street R. Co.*, 193 Ia. 616; *Creamer v. West End Street R. Co.*, 156 Mass. 320; *Powers v. Connecticut Co.*, 82 Conn. 665; *Conroy v. Boston Elevated R. Co.*, 188 Mass. 411; *Haskins v. St. Louis & S. R. Co.*, 193 Ill. App. 437; *Street R. Co. v. Boddy*, 105 Tenn. 666; *Smith v. City R. Co.*, 29 Or. 539.

Though in some of those cases it is stated as a rule that a person ceases to be a passenger the moment he alights upon the street, yet in no case cited was the person injured at that moment, nor immediately afterward, at the place where he had alighted. In each of the cases he had taken his way from that spot and was injured upon the street, after he had left the car and when, with-

out question, he had become a pedestrian, entirely beyond the control of the carrier. In those cases, therefore, it did not become necessary to determine the exact instant when a person alighting from a street car would cease to be a passenger. Whether or not a person in the act of alighting, or who had alighted and had been injured immediately and before he had had an opportunity to move away from the spot, had ceased to be a passenger was not in question nor passed upon.

In some of those cases (*Chesley v. Waterloo, C. F. & N. R. Co., Hammett v. Birmingham R., L. & P. Co, Creamer v. West End Street R. Co., Street R. Co. v. Boddy,* and *Smith v. City R. Co.*), it is stated generally that a street railway company is not obliged to warn passengers, about to alight from the car, as to the danger they may encounter from passing vehicles. Obviously, however, in these particular decisions the danger from passing vehicles, against which it is said the company is not required to warn its passengers, was a danger which the passenger was to encounter after he had descended from the car and moved away, and at a time when the relation of carrier and passenger would unquestionably have been terminated. These decisions do hold that the company need not warn its passengers as to those dangers, which the passenger may encounter after the relation of carrier and passenger has terminated, yet they do not directly pass upon the question of whether or not the company must keep a lookout and warn passengers of the danger from vehicles that he may encounter while in the act of alighting, or at the very spot where he shall alight upon the street, and before the relation of carrier and passenger has ceased. During that period, when a passenger is alighting from the car and until after he has ceased to be a passenger, the company owes him certain duties and obligations, to the end that it may furnish him a safe delivery at his destination. Whether or not, in the performance of those duties, it must warn and guard him against the

danger from passing vehicles is the precise question here to be determined, and which is not, as we view it, entirely solved by any of the decisions above mentioned, though some of the general statements made would seem broad enough to cover it. In the case of *Hammett v. Birmingham R., L. & P. Co., supra,* as an instance, the court announced as a general rule that "It is the duty of a street railroad carrier to provide a reasonably safe place for the landing of its passengers," and "The rule as to providing a safe place for alighting has no reference to independent agencies operating in the street such as a motorcycle."

We are unable to agree with the contention that the company owed Miss Jensen no duty for the reason that, at the time of the accident, she was no longer a passenger. We do not believe the rule is quite so strict as to hold that a person who has taken passage on a street car ceases to be a passenger at the moment, upon reaching his destination, that his feet touch the pavement in the act of alighting. It is a conceded rule that the company must exercise care in selecting the place for the passenger to alight, since that is a part of the obligation of transportation which the street railway company has assumed. If there are defects or obstructions in the street, it must avoid them, if it reasonably can, and select landing places where the condition of the street is free from those dangers. If there are dangers in the condition of the street at the place of alighting, known to the company and not known to the passenger, it is its duty to warn the passenger as against those dangers. Where a passenger has alighted upon the street, the company still owes him protection at that place, as against the act of its employees or the movement of its car. *Johnson v. Washington Water Power Co.,* 62 Wash. 619; *Virginia Trust Co. v. Raymond,* 120 Va. 674; *Houston v. Lynchburg Traction & Light Co.,* 119 Va. 136. If such a person is, in any sense, a passenger at the place where he alights upon the street; if the company at that

time owes him any obligation of protection, either as against its own negligence or otherwise, by reason of his relation to it, then, of course, he is a passenger in all respects. So long as the relation continues, the company owes him every obligation that springs from that relation.

The plaintiff relies upon the case of *Wood v. North Carolina Public-Service Corp.*, 174 N. Car. 697, 1 A. L. R. 942. In that case it was held that a passenger, who was struck by a passing vehicle immediately after he had alighted upon the street, did, at the time of the accident, retain his character as a passenger, and that the company owed him a duty of protection. Since the relation of carrier and passenger was found to exist, the court concluded that the company had owed him the duty of watching for and warning him against the danger from passing vehicles. We do not believe that that conclusion necessarily follows from the mere fact of the relation of carrier and passenger.

In the case of *Loggins v. Southern Public Utilities Co.*, 181 N. Car. 221, the court carried the principle, established in the *Wood* case, one step farther, for in the *Loggins* case the person had alighted from the street car, and had stepped away from the place of alighting and was struck by a passing vehicle as he was making his way across the street to the curbing, at a time, we believe, when the relation of carrier and passenger had ceased to exist. The *Loggins* case is clearly in conflict with the numerous decisions which we have above cited. In both of the decisions by the North Carolina Court there were strong dissenting opinions.

Though Miss Jensen may have still retained her character as a passenger at the time she was struck by the motorcycle, it does not follow that the company was an insurer as to her safety. The company, it is true, is bound to exercise the utmost skill, diligence and foresight, consistent with the practical conduct of the business in which it is engaged, but it is not bound to do

Jacobson v. Omaha & C. B. Street R. Co.

everything that can possibly be done to insure the safety of passengers. *Bevard v. Lincoln Traction Co.*, 74 Neb. 802; *Omaha Street R. Co. v. Boesen*, 74 Neb. 764. Were it to take every possible precaution conceivable for the safety of its passengers, and were they allowed to depend entirely upon the precaution taken by the company, the company would be so engrossed with the care of its passengers and the protection of itself against liability that its practical performance as a transportation company would be seriously impaired. A street railway company is compelled to deliver its passengers upon the public streets. It cannot control nor secure absolute safety as to its landing places. The street is not under its control and its right to operate vehicles on the street is not paramount to the rights of other persons to do the same thing. It has no control over the condition of the roadway, nor can it control the traffic. The question here is not, as we view it, to be determined by the fact of whether or not Miss Jensen retained her character as a passenger, but, rather, what was the extent of the company's obligation toward her as a passenger, at the time and under the circumstances in question.

The duty which the company owed her as a passenger while she was upon the street was necessarily much more limited than the duty it owed her while she was in the car. As said in the lower court's opinion in the case of *Keator v. Scranton Traction Co.*, 191 Pa. St. 102, 105: "Of course, the defendant's duty of protection was much less while she was upon the street than while she was in the car. As long as she was upon the street, the defendant was not bound to protect her against assault or injury at the hands of other persons. It had no control over the highway, outside of its rails, nor any right to interfere with persons pursuing their avocations on the street, either upon foot or otherwise. Having no right of control it owed her no duty of protection against strangers; but upon what ground had the defendant

ceased to owe the plaintiff protection as a passenger against its own conduct?" The appellate court in that case added (p. 112) : "Unquestionably, the carrier is not answerable for the condition of the highway on which the passenger alights, or from which he stands or steps before entering the car; nor is it answerable for the conduct of third persons who, by neglect, cause injury in such situation to the passenger."

In the case of *Farrington v. Boston Elevated R. Co.*, 202 Mass. 315, the company stopped its car at a place where there was a curbstone on the street at the place where the passenger was given an opportunity to alight. By reason of the irregularity in the surface of the street, the place was one of more or less difficulty as a place for landing passengers. However, the danger was inherent in the street and one which was obvious to any person who looked. The court stated that, where a street is temporarily defective and a passenger alighting is apt to step on the defect, the street railway company may be held to reasonable care either by way of warning or otherwise, but where there is nothing in the appearance of the passenger to indicate to the conductor that she has not ordinary capacity to care for herself, or that it would be more dangerous for her to alight than for other persons, the company has a right to assume that she knows generally of the danger, and the court stated that any other rule would impose upon the defendant a burden at once unreasonable and practically impossible of performance.

In a somewhat similar case, *Scanlon v. Philadelphia Rapid Transit Co.*, 208 Pa. St. 195, the surface of the street at the point where the passenger was allowed to alight was of an irregular character, requiring of the passenger a long step. The passenger alighting at this place was injured, and the court said (p. 197) : "The car was running upon the public highway, over which it must be remembered, the defendant company has no control. In laying its tracks, it must conform to the

established grade. It can neither construct nor alter any of the places at which passengers are to step on or off its cars. It is obliged to place its tracks and run its cars where the public authorities direct. The contour of the surface of the street, and the sides and gutters are all fixed by the municipal authorities. Passengers leaving the cars must step upon the surface of the street in the condition in which it is placed by the city which fixes and maintains the grades. Obviously, the rules which might well and reasonably apply to steam railroads owning their own right of way and having complete control of the approaches thereto, cannot reasonably be applied to street railways which have not the right of eminent domain, and are only allowed the use of the public highways in common with other vehicles. It may be that in this case the conductor misunderstood the signal of the plaintiff, and stopped the car sooner than she wished; but, if so, she had only to signify that fact and retain her seat and be carried to the desired spot. She was under no compulsion nor did she receive even a suggestion from the conductor as to where she should get off. That was a matter solely for herself. * * * The fact that the street sloped off at the side upon a descending grade to the gutter necessitated a very long step for any passenger attempting to get off in that vicinity. But this fact was perfectly obvious to the plaintiff, if she used her eyes, which she was certainly bound to do."

We cannot say that a street railway company is, as a general rule, required to watch for and to warn its passengers, who are about to descend into the street, against those obvious dangers from moving vehicles which are incidental to and common on the street, and which are known to all. Such a warning would, in most instances, be utterly superfluous. A rule requiring the company to watch for and warn its passengers as to all such dangers would be impracticable and extremely burdensome. The danger from moving vehicles and from other independent agencies operating upon the street is an ever-present one,

intermittent in character, varying in degree with each occasion, and is of such kind that previous warning by the company of each specific danger as it arises would become practically impossible. The danger is not constant, but often arises suddenly, and is only momentary. The person encountering danger, having alone the control over his own movements, must rely upon himself and upon his own precaution and judgment. The responsibility of the company should be coextensive with its practical control. It is impracticable for another to take the responsibility of attempting to control and guard, as to such dangers, the person able to take care of himself. The passenger is in a much better position to guard against those dangers than is the company. The passenger standing upon the step or at the door, in readiness to alight, has a full view of the street in all directions. If there are approaching vehicles, it is solely within his power to fix the exact moment when he shall alight from the car. The company cannot hurry him nor compel him to alight, but must give him a reasonable opportunity to select his time and to direct his own progress, having regard for his own protection and safety. If the company does not give him proper opportunity to alight, or compels him to alight so as to cause him to be placed in the way of danger from such vehicles, it of course would be liable. *Norton v. Third Avenue R. Co.*, 49 N. Y. Supp. 898. The danger of being struck by passing vehicles is commonly known to all, and one which the street railway company cannot guard the passenger against, any more than it can guard the passenger against conditions of the street where it is required to discharge passengers and which do not furnish the passenger as safe a place for landing as could have been furnished by platforms or stations.

In the case of *Oddy v. West End Street R. Co.*, 178 Mass. 341, a passenger had signaled the conductor that she wished to alight at the next street intersection. The conductor, observing that fire engines were passing along

Jacobson v. Omaha & C. B. Street R. Co.

the street, brought the street car to a stop in the middle of the block, in accordance with the custom of the company and the ordinances of the city. The passenger, believing that she had reached her destination, stepped off the car, unobserved by the employees of the company, and was struck by a passing hose cart immediately upon alighting from the street car. That case differs from the one here in that the car there was not stopped for the purpose of the discharge of passengers, and the company was not, therefore, at the time, exercising, or perhaps required to exercise, toward her that watchfulness that it would over a passenger which the company was voluntarily discharging, but the court stated as a general rule: "Street car companies carrying passengers in ordinary public streets or highways are not negligent in not providing means for warning passengers about to leave a car of the danger of colliding with or of being run over by other vehicles in the street. The risk of being hurt by such vehicles is the risk of the passenger and not that of the carrier. It is not a danger against which the carrier is bound to protect the passenger or to give him warning."

A case, which comes nearer passing upon the question which we are considering here than any that has come to our attention, is the case of *Ellis v. Hamilton Street R. W. Co.*, 48 Ont. Law Rep. 380. In that case the car had stopped, at the instance of the passenger, in the middle of the block, and not at the customary stopping place. The passenger, upon leaving the car, and at a moment when the court recognized that the relation of passenger and carrier still continued, was struck by a passing vehicle. The court held that the company was not negligent in failing to warn the passenger of the danger of passing vehicles at the point where she was allowed to alight. The court said: "There is nothing in the evidence to show that the motorman knew that the plaintiff did not know and appreciate, as much as he did, any risk she was taking in asking that the car be

stopped; and, though she had an opportunity of doing so, she did not, before stepping from the car, look for an approaching motor. Situated as she was, she must have had a better opportunity of doing this than had the motorman. I know of no statute or case, and none was cited to us, which imposes on a street car company the duty of warning passengers about to leave the car of the danger of being run over or injured by other vehicles in the street. Section 15 of the motor vehicles act was, no doubt, passed to protect persons about to board or to alight from cars, but the duties and obligations are put by that act upon the driver of the automobile, and not upon the street car company. There is nothing in the act which obliges a street car company not to stop for the purpose of discharging passengers when other vehicles are passing, or not to permit a passenger to alight without seeing that the street is free from vehicular traffic, or even to warn its passengers to look out for passing traffic."

Though as a general rule we believe that a street railway company is not obliged to warn passengers against the dangers from passing traffic that they may encounter in alighting from the company's cars, yet we do not say that that rule is inflexible and not subject to exceptions. Where the passenger is a child, or a person who does not possess full and normal faculties for protecting himself, which condition is known, or, in the exercise of due care, should have been known to the company's employees, the company no doubt owes him a greater degree of care to protect him from danger at the place where he alights than it does the ordinary individual, and, it may be, in such a case, should be on the lookout to warn him of the dangers of passing vehicles. And in any case where there is a particular danger from a passing vehicle, which danger has become known to the company's employee, and where it has become apparent to such employee that such danger is not known to the passenger about to alight, we take it, of course, to be the duty of the employee to

notify the passenger where there is reasonable opportunity to do so. See *McCoy v. Omaha & C. B. Street R Co.*, 104 Neb. 468.

In this case the plaintiff's intestate was a young woman, alert and apparently keenly alive to the conditions which surrounded her. We cannot say that there was any negligence on the part of the motorman, who was unaware of the approaching danger, and on whom we do not find that there was any affirmative duty to watch for such danger. The question, however, remains as to whether negligence can be predicated upon the action of the conductor on the car, who knew of the approaching vehicle, in failing to give warning. The conductor, it must be remembered, was at the far end of the car. He had seen the motorcyclist approaching at a high rate of speed, but he had a right to assume, until the contrary affirmatively appeared, that the motorcyclist, when he neared the car, would slacken his speed, and so far turn out toward the curb as to avoid hitting or endangering any passengers who might happen at the time to be in the act of descending from the street car. He also had a right to assume, where the contrary did not appear, that passengers on the car who were about to alight were also on the alert and watching for passing vehicles. His attention was directly concerned with the passengers immediately under his observation. It appears to us from a reading of the evidence that the conductor, after the danger had become apparent to him, did not know that Miss Jensen was unaware of the danger, and, even had he then known it, that he would have had no time or opportunity to notify her, so as to have prevented her from meeting with the accident.

The record would justify holding the motorcyclist civilly, as well as criminally, but we are of opinion that the evidence in behalf of the plaintiff, as we have set it out above, was insufficient to support a finding of negligence on the part of the company and of a violation of an affirmative duty which it owed to the plaintiff's in-

370 NEBRASKA REPORTS. [VOL. 109

testate, upon which an action for negligence and recovery of damages could be properly predicated against it.

The ruling of the trial court, therefore, directing a verdict in favor of the defendant, was, as we view it, correct, and the judgment should be

AFFIRMED.