No. 30,459.

SUSAN JANE MILLER, *Appellee*, v. THE KANSAS CITY PUBLIC SERVICE COMPANY, *Appellant*.

(15 P. 2d 453.)

Opinion filed November 5, 1932.

*Fred Robertson, Edward M. Boddington, J. O. Emerson,* all of Kansas City, and *Charles M. Carr,* of Kansas City, Mo., for the appellant.

*David F. Carson* and *Rush L. Fisette,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: Plaintiff, alighting from a street car, was struck by a passing automobile and sustained injuries for which she sued the street railway company and obtained a judgment. Defendant has appealed.

The facts disclosed by the record may be stated thus: Southwest boulevard in Kansas City, Kan., at the place in question, is an east-and-west street. It is paved, forty-four feet wide, and has on it two street-car lines, one for west-bound, the other for east-bound traffic. The west end of the street-car lines is at Boeke street, and the tracks are so arranged that west-bound cars, on reaching the end of the line, or near it, back first onto the east-bound track and then onto a wye on South Ninth street, and from that turn to the east-bound track on Southwest boulevard. On the north side of Southwest boulevard, and one block east of Boeke street, is Benton street, which ends at the south in Southwest boulevard. South Ninth street begins on Southwest boulevard about eighty-five feet west of

Benton street and extends south. Plaintiff's residence was just north of Southwest boulevard and about the middle of the block between Boeke street and Benton street. She had lived there about seven years prior to the date of the casualty. She worked in Kansas City, Mo., and took the street car to work each morning and to return in the afternoon. The west-bound street car, after passing Benton street, sometimes stopped near the middle of the block, directly in front of plaintiff's home. There was no definite street-car stop along that block, but the car would be stopped almost anywhere in the block, depending upon what cars, if any, were ahead of it, making the turn on the wye. Plaintiff frequently had gotten off the car when it stopped at some place in the block. There was in force a city ordinance which provides that a person in charge of a vehicle approaching a street car which had stopped, should not go closer than ten feet, nor drive by a street car while passengers are boarding or alighting, except at a safety zone. On the day in question plaintiff was a passenger on the street car returning home from work. It was what is spoken of as a one-man car. The door was at the right front of the car and was opened or closed by the motorman operating a lever. When open it folded back against the casing and a step unfolded. The car passed Benton street and had gone about one-third of the block when it stopped, because of cars ahead of it. Plaintiff arose from her seat and walked to the front of the car and stood in the vestibule as though preparing to get off. The motorman saw her standing there and said: "All right, lady," and opened the door. She started to get off the car, stepped onto the step which had been lowered, and was stepping to the pavement when she was struck by an automobile passing from the east. She was thrown across the hood of the automobile, slid down the running board on the right side of the pavement near the curb, and sustained severe bruises and other injuries, for which she sought to recover damages in this action. As she was getting off the street car she did not look in either direction for approaching automobiles. She heard a grating of brakes, but did not see anything, nor did she turn her eyes in the direction from which the automobile came.

The jury answered special questions, as follows:

"1. Did the plaintiff look to the east before she alighted from the street car or stepped on the pavement? A. No.

"2. Could the plaintiff by looking before she made a step to the pavement have learned of the approach of the automobile which struck her? A. No.

"3. Did the body, after being struck, fall in the parking north of the north curb? A. No.

"4. If you answer the above question 'No,' then state where the plaintiff's body fell with reference to the north curb and how far from it. A. About 2 feet from north curb.

"5. If you find for the plaintiff, state specifically what negligence the defendant's motorman was guilty of. A. By opening door of car at no stop.

"6. Was the failure of the plaintiff to look for an approaching automobile one of the proximate causes of her injury? A. No.

"7. Was any act or omission of the automobile driver one of the proximate causes of plaintiff's injury? A. Yes.

"8. Could the plaintiff, by looking eastward before she stepped down on the step of the street car, have seen the automobile coming and have avoided her injury? A. Do not know."

Defendant moved to set aside the answers to special questions numbers 2, 3, 6 and 8 as not being sustained by any evidence. The court overruled the motion, and properly as to question No. 3, for as to that there was a conflict of evidence. We find no evidence, however, to sustain answers to questions 2 and 8, treating the latter as being answered in the negative. It is not even hinted in the evidence or the argument that there was any obstruction, or that there was anything which prevented plaintiff from looking either to the east or to the west for passing automobiles before she attempted to step onto the pavement. Neither plaintiff nor any other witness testified that by looking before she stepped to the pavement she could not have learned of the approach of the automobile which struck her. Obviously she could have done so. These findings should have been set aside. The answer of the jury to question No. 6 is a conclusion directly opposed to the established facts. The time was about four o'clock in the afternoon. The atmosphere was clear. There was nothing to prevent her seeing the approaching automobile had she looked. She did not look. The jury so found in answer to question No. 1, and that accords with plaintiff's testimony. For the jury to find, as in answer to No. 6, that her failure to look for approaching automobiles before she stepped onto the pavement was not a proximate cause of her injury is not only unsupported by any evidence, but is contrary to facts clearly established.

The jury found the negligence of plaintiff to be that its motorman opened the door of the car at no stop. This finding, of course, relieved defendant of all other allegations of negligence. Appellant contends that, as a matter of law, it was not negligent in this particular. There is an abundance of authority to sustain this view.

The place was one at or near which the car frequently stopped. Plaintiff knew this and frequently got off the car when it stopped at some place along that block. It is not claimed there was any defect in the pavement at the place where plaintiff got off, or that there was anything that would make it more dangerous for her to get off there than if the car had stopped at Benton street or at Boeke street. The danger of being struck, as she got off the car, by an automobile driven by a person who was paying no attention to the city ordinance and who, if there had been no ordinance, was not using due care in passing a street car, would have been just as great if the car had stopped at one of the streets as it was at the place where it did stop. In either event due regard for her own safety made it incumbent upon her that she look for approaching vehicles before stepping into the traffic way. While we are not cited to one of our own decisions passing on the point, the authorities elsewhere accord with the views just expressed. (*Louisville Railway Company v. Saxton*, 221 Ky. 427, 298 S. W. 1105; *Oddy v. West End Street Railway*, 178 Mass. 341, 59 N. E. 1026; *Lindgren v. Puget Sound Inter. R. & P. Co.*, 142 Wash. 546, 253 Pac. 791; *St. John v. Connecticut Co.*, 103 Conn. 641, 131 Atl. 396; *Low v. Harrisburg Railways Co.*, 290 Pa. St. 365, 138 Atl. 852; *MacLearn v. Iowa Southern Util. Co.*, 212 Ia. 555, 234 N. W. 471; *Cleve. Rd. Co. v. Sebesta*, 121 Ohio St. 26, 166 N. E. 898.)

On this point appellee cites *Kennedy v. Railways Co.*, 114 Kan. 853, 221 Pac. 249. There liability was sustained when plaintiff's injuries were received while getting off a street car at a place where there were excavations in the street. But there is no situation of that kind here. There was nothing wrong with the street or pavement, and plaintiff's injury did not result from such a defect. While defendant, being a common carrier of passengers for hire, owed plaintiff a high degree of care, it was not her insurer. (*Railway Co. v. Brandon*, 77 Kan. 612, 95 Pac. 573; *Cloud v. Traction Co.*, 103 Kan. 249, 173 Pac. 338.)

Defendant moved for judgment on the special questions, notwithstanding the general verdict, for the reason not only that the answers showed a lack of negligence on behalf of defendant which would make it liable, but also because the answer to question No. 1 amounts to a finding that plaintiff was guilty of contributory negligence as a matter of law. This motion was overruled, and appellant complains of that ruling. The motion should have been sustained for both reasons. From the answer to question No. 1 it is clear that

plaintiff's negligence in not looking for an approaching automobile as she stepped from the street car to the pavement contributed materially to her injury.

The judgment of the court below is reversed, with directions to enter judgment for defendant.