## GENEVIEVE FOX v. MINNEAPOLIS STREET RAILWAY COMPANY AND ANOTHER.[1]

December 22, 1933.

Nos. 29,546, 29,671.

[1]Reported in 251 N. W. 916.

344

*Robert J. McDonald,* for appellant Genevieve Fox.

*Cobb, Hoke, Benson, Krause & Faegre, Paul J. McGough,* and *Nathan A. Cobb,* for appellant Walter Anderson.

*Ralph T. Boardman* and *John F. Dulebohn,* for Minneapolis Street Railway Company, respondent.

*HILTON, Justice.*

Action to recover damages for personal injuries sustained by plaintiff in a collision between defendant Anderson's automobile and a street car of the defendant Minneapolis Street Railway Company, hereinafter referred to as the railway company. Each defendant answered separately denying any negligence or liability; each asserted the contributory negligence of plaintiff; and each asserted that the negligence, if any, was on the part of the other defendant. At the close of the testimony the court denied the motion of each defendant for a directed verdict.

The jury, on June 13, 1932, returned a verdict in favor of plaintiff against both defendants in the sum of $32,000. The railway company moved for judgment notwithstanding the verdict or a new trial; Anderson moved separately for a new trial. Both motions were submitted on written briefs and oral argument on November 7, 1932, and on December 12, 1932, the court denied the motion of the railway company for judgment notwithstanding the verdict and granted the motions by it and Anderson for a new trial, giving as its reasons therefor that the verdict was so excessive that the question of damages should be tried over and that the question of the railway's liability was so close that the whole matter should be tried over as well. Plaintiff then moved the court for a rehearing and reargument of the entire matter, suggesting that if the verdict was deemed excessive it might be reduced by the court. Upon this motion on February 24, 1933, the court granted a new trial unless plaintiff should file a written consent to a reduction of the verdict to $19,458.18, in which event the motions of both defendants for a new trial were denied. Plaintiff did so consent. By the same order judgment notwithstanding the verdict was granted to the railway company. From the judgment entered pursuant thereto plaintiff appealed. Defendant Anderson appealed from the order of February 24, 1933, denying his motion for a new trial.

The reference in appellant Anderson's brief characterizing the court's procedure as "vacillation" is not warranted. The trial had been a lengthy one, expensive both to the litigants and the public. After a full consideration and having the benefit of further argument, the court changed its mind, as it had a right to do. Scheurer v. G. N. Ry. Co. 141 Minn. 503, 170 N. W. 505.

Due to the questions involved in this case, a rather full statement of the facts is necessary.

Johnson street in Minneapolis runs north and south; Spring street begins at Johnson street and runs in a slightly southwesterly direction; Winter street intersects Johnson street one block south of Spring street. An overhead viaduct of the Northern Pacific Railway Company crosses Johnson street diagonally at a point just south of the Spring street intersection and extends in a southwest-

erly and northeasterly direction. The railway company operates its cars under the viaduct; its trolley wires are fastened by brackets thereunder. About a year and a half before the accident the city passed an ordinance requiring street cars to stop on the near side of an intersection. Prior to that time the cars had been stopping on the far side of intersections. Upon the passage of that ordinance the railway company removed its "car stop" sign on the far side or north side of Spring street and placed such a sign south of Spring street on its trolley pole nearest thereto. That sign was 144 feet south of the intersection and about 104 feet south of the viaduct. The ordinance did not require the installation of "car stop" signs; they were provided by the railway company for its own purposes. Approaching the viaduct from the south, that is, from Winter street, there is a 3.2 per cent down grade for a distance of about 300 feet to a point about 30 feet from the viaduct, where the street is practically level and so continues for 85 feet, when it again rises to its normal level.

Plaintiff lived on Buchanan street, two blocks west of the Spring and Johnson streets intersection. About three p. m. on February 2, 1932, she was a passenger on a street car going north on Johnson street. She sat on the long seat in the rear portion of the car and on its east side, facing west. The day was cloudy and foggy. A light snow was falling, and the streets were icy and slippery. The street conditions were substantially the same all over the city. Defendant Anderson, driving a Packard sedan, equipped with four-wheel brakes and weighing approximately 5,000 pounds, was following behind the street car. The street car, after stopping at Winter street, continued on toward Spring street, passed its "car stop" sign, slowed down and stopped on the level portion of the street under the viaduct, its rear end extending out two or three feet south thereof. The gates were opened to permit plaintiff to descend to the street. As she was in the act of alighting, Anderson's automobile collided with the rear gates and steps of the street car, and plaintiff was thrown to the pavement. Her right leg was crushed and nearly severed at the ankle. It was later amputated about five and a half inches below the knee.

■ The evidence sufficiently established Anderson's negligence. The court observed in its memorandum:

"There is no question but what the jury could find—almost should find—that the defendant Anderson was negligent."

Anderson testified that when the street car stopped at Winter street he stopped his automobile about 50 feet behind it; that when the street car started again he followed at a distance of 75 feet at ten miles an hour, driving his automobile astride the east rail of the northbound track; that he continued at that speed and at that distance behind the street car until after it had passed the "car stop" sign and had slackened its speed shortly before reaching the viaduct; that when about 30 feet from the rear of the street car he realized that plaintiff was about to alight and that he then applied his brakes, the car sliding about the last 25 feet. Two witnesses testified that as plaintiff was going down the steps of the street car Anderson's automobile was about 50 feet to the rear and approaching at about 35 miles an hour, the wheels of the automobile still straddling the east rail of the northbound track. Anderson was familiar with the slippery condition of the streets on the day of the accident. He was familiar with Johnson street; had traveled it several times a week for four years; knew of the location of the "car stop" sign, the viaduct, and the Spring street intersection. The force of the collision moved the standing street car, weighing 20 tons, three or four feet ahead; the Packard rebounded about three feet. At least one window of the street car was broken. The steel frame of one of its gates and the iron step were bent in; the headlights of the automobile were broken; its left front fender bent; its steel double bumper partly broken off; passengers in the street car were jolted.

The jury evidently did not give credence to Anderson's claim that he was driving eight miles an hour when he applied the brakes and only five when he struck the street car. He admits that he did not sound a horn or give any other signal of his approach. There was other evidence that he was going 25 miles an hour at the time of the collision. The jury was justified in finding that Anderson was not

driving his automobile "at a speed not greater than is reasonable and proper, having due regard to the traffic, the surface and width of the highway, and of any other conditions then existing," as provided by 1 Mason Minn. St. 1927, § 2720-4. Knowing conditions as he did, Anderson should have kept his car under such control as to permit him to bring his car "to a full stop at least ten feet in the rear of" the street car. 1 Mason Minn. St. 1927, § 2720-22(b).

To absolve himself from the charge of negligence, Anderson asserts that the railway company's motorman in proceeding past the "car stop" sign and stopping at the foot of an icy decline under the viaduct laid a trap for motorists and especially for him, who knew that street cars customarily stopped at the sign. If the street car company was negligent in that respect, such negligence could not excuse Anderson from liability to plaintiff for his own negligence, which was a proximate cause of the accident.

■ On the record the jury was justified in absolving plaintiff from any contributory negligence. Shortly after the street car left Winter street plaintiff pushed the button, signaling her desire to get off at Spring street. She remained seated until she felt the car slow down, when she got up and started toward the rear platform. She was not feeling well, and the conductor took her by the arm and assisted her to the top step, where he released his hold. She testified that at the top step she glanced to the rear and saw an automobile about 50 feet away. She did not observe its speed, as she was paying attention to the platform and the steps of the car, which were slippery. When she was on the lower step and about to step to the brick pavement the collision occurred. She had a right to assume that the automobile approaching 50 feet away would stop, as the law required. Whether an ordinarily prudent person would have looked more carefully and observed the speed at which the automobile was approaching was for the jury.

■ We are now to consider whether the court was in error in granting the railway company judgment notwithstanding the verdict. We are, of course, to accept the view of the evidence most favorable to plaintiff. The jury by its verdict found that plaintiff was not guilty of contributory negligence in attempting to alight

from the street car under the existing conditions; she was in a position to observe everything that the street car conductor could. If she was not negligent, then the conductor was not. On the facts, even if the rule requiring the railway company to exercise more than ordinary care to its passengers is invoked, it cannot be said that any duty owing by it to plaintiff was violated. Neither the street car company's employes nor plaintiff were required to presume that Anderson would, in violation of law, do what he did. The rule adhered to by this and the majority of courts is that a street railway company under ordinary circumstances is not responsible for injuries to a passenger that are caused by obvious street dangers. The risks incident thereto are known to all passengers; they have as good or better opportunity to observe and protect themselves from those risks as has the conductor or motorman. Ruddy v. Ingebret, 164 Minn. 40, 204 N. W. 630, and cases cited, 44 A. L. R. 159, 162.

The evidence was in serious conflict (more than a dozen witnesses on each side) as to whether the street car usually stopped at the "car stop" sign or under the viaduct. The jury had a right to believe that the former was the usual stopping place. The car having stopped at a place other than the usual one, under the facts in this case, was the railway company absolved from negligence as a matter of law? We think it was. The car stopped on the near side of the intersection in accordance with the requirements of the ordinance. There was nothing about that place that made it inherently dangerous for alighting passengers; it did not increase traffic risks; it was no more dangerous to an alighting passenger there than it would have been at the "car stop" sign. The railway company's duty was no greater, nor was Anderson's duty any less. A street railway company is not an insurer of the safety of its passengers. The conclusions we have reached are supported by numerous authorities, some of which are: Downs v. Northern States Power Co. 200 Wis. 401, 228 N. W. 471; Lacks v. Wells, 329 Mo. 327, 44 S. W. (2d) 154; Oddy v. West End St. Ry. Co. 178 Mass. 341, 59 N. E. 1026, 86 A. S. R. 482; Miller v. Kansas City P. S. Co. 136 Kan. 288, 15 P. (2d) 453; Jacobson v. Omaha & C. B. St. Ry.

Co. 109 Neb. 356, 191 N. W. 327, 332, 31 A. L. R. 563; Chesley v. Waterloo, C. F. & N. R. Co. 188 Iowa, 1004, 176 N. W. 961, 12 A. L. R. 1366; MacLearn v. Iowa S. U. Co. 212 Iowa, 555, 234 N. W. 851; Terre Haute, I. & E. T. Co. v. Evans, 87 Ind. App. 324, 161 N. E. 671; Ellis v. Hamilton St. Ry. Co. 48 Ontario L. R. 380. Although in certain of these cases the facts differ somewhat from the instant case, yet the statements of law therein are in accord with the views herein expressed.

In Ruddy v. Ingebret, 164 Minn. 40, 204 N. W. 630, this court recognized that the rule that a street railway company is not obliged to warn passengers against the dangers from passing traffic is flexible and subject to certain exceptions, citing Jacobson v. Omaha & C. B. St. Ry. Co. 109 Neb. 356, 191 N. W. 327, 31 A. L. R. 563. In that case it is stated [109 Neb. 368]:

"Where the passenger is a child, or a person who does not possess full and normal faculties for protecting himself, which condition is known, or, in the exercise of due care, should have been known to the company's employees, the company no doubt owes him a greater degree of care to protect him from danger at the place where he alights than it does the ordinary individual, and, it may be, in such a case, should be on the lookout to warn him of the dangers of passing vehicles."

Plaintiff was just returning from a hospital, where she had received a pneumo-thoracic treatment of her right lung. She testified that she was weak and stumbled on that account on leaving her seat and was assisted by the conductor from the door until she reached the edge of the platform. As far as the evidence disclosed, she was in full possession of her mental faculties, and no claim is made that her hearing and eyesight were other than normal. There is nothing to indicate that plaintiff's injury resulted from her physical or other inability to protect herself in going down the steps. She reached the lower step without any assistance or difficulty.

■ The verdict as reduced to $19,458.18 (which included over $1,600 incident to her hospitalization and doctors' services) was not

excessive. Plaintiff was 21 years of age. Her life expectancy was 41.53 years. At the time of the accident her right leg was practically severed except for a few muscle strands and one large nerve trunk and a piece of skin. At the first operation, after having cleansed and sterilized the injured part, the tibia and fibula were stripped' back and sawed off. On April 11, 1932, a second operation was performed and the bones further shortened in order to insure a healthy bone. Plaintiff suffered a great amount of pain; she was a bed patient until April 21, requiring a private nurse for four weeks. During that time she was very nervous, her appetite was poor, she did not sleep well. Her weight at the time of the injury was 118 pounds; at the time of the trial she weighed 99 pounds and was still nervous, had tremors, and suffered continual pain in the stump. The scar tissue at the bottom of the stump is likely to be painful if there is any pressure on it at all, and wearing an artificial limb may cause distress in the future. The percentage in reduction of the verdict was large but was by no means unprecedented and does not affect the situation here.

Affirmed.

*DEVANEY, Chief Justice,* absent in attendance upon pardon board, took no part.

*LORING, Justice* (dissenting).

I dissent from a ruling which acquits the street railway company of negligence as a matter of law. Giving full force to the doctrine announced in the Ingebret opinion, 164 Minn. 40, 204 N. W. 630, I do not think this is a case for its application. Here we have a passenger in such physical condition as to require assistance from her seat to the car steps. She was escorted there by the conductor, who, knowing the exceedingly slippery condition of the streets, saw the automobile approaching directly to the step to which he was piloting his passenger. There was evidence that the automobile was approaching at 35 miles an hour. It struck the street car with great force. Plaintiff was in the act of alighting, her left foot still on the step, her right not yet touching the pavement. In the condition of the streets at the time, no sane person could reasonably

anticipate that the automobile could be stopped before colliding with the street car. Seeing the automobile coming under these circumstances, the conductor, in the exercise of the high degree of care imposed by law, should have refrained from permitting plaintiff to step into certain danger. Her attention was on her footing and particularly on the condition of the steps. She might well be excused for not realizing the impending collision. On the evidence most favorable to her, the conductor could not be so excused. This was not an ordinary street hazard where the conductor might anticipate that the automobile would stop. Its speed on the slippery street was such that it could not be expected to. The force of the collision demonstrates its speed. In the Ingebret case the motorman was held not to be required to look for ordinary street hazards. In the case at bar the conductor actually saw the unusual danger in ample time to prevent his passenger from being hurt. I think the order for judgment in favor of the railway company should be reversed.

*DIBELL, Justice* (dissenting).

I concur in the views of Mr. Justice Loring.

