MARION KIEGER v. ST. PAUL CITY RAILWAY COMPANY AND ANOTHER.[1]

October 29, 1943.

No. 33,535.

[1]Reported in 11 N. W. (2d) 757.

*Clifford W. Gardner,* for appellant.

*C. J. Menz* and *A. J. Donnelly,* for respondents.

THOMAS GALLAGHER, JUSTICE.

This is an action to recover for injuries and other damages sustained by plaintiff as a result of the alleged negligence of defendants. Before the case was assigned for trial, plaintiff's counsel appeared specially and challenged and "moved to quash" the entire panel of jurors selected for that term of court, upon the ground that said panel had been called in violation of the constitutional and statutory provisions relative thereto. Subsequently, when the case was assigned for trial, plaintiff again challenged and "moved to quash" the entire panel and further challenged the particular panel assigned to try the action, upon the ground previously specified. In each instance plaintiff's challenge and "motion to quash" were denied.

Plaintiff thereupon excepted to such rulings and proceeded to trial. At the conclusion of the testimony the court granted defendants' motion for a directed verdict. Plaintiff moved to vacate the verdict and for a new trial. This appeal is from the order denying such motion.

On January 25, 1942, at about 7:30 p. m., plaintiff was a passenger on defendant street railway company's westbound streetcar on the Como-Harriet line. At that time, at the intersection of Front and Ryde streets in St. Paul, in response to plaintiff's signal, the motorman, defendant Golden Simmons, who also served as conductor, stopped the car to permit her to leave by the front exit thereof. She testified that the gates were opened after the car had stopped, and that as she stepped down into the street and while still partially on the lower step she was struck by an automobile which had failed to stop ten feet back, as required by Minn. St. 1941, § 169.24 (Mason St. 1940 Supp. § 2720-209), and which continued on thereafter so that its license number and the name of the driver could not be ascertained.

Plaintiff claims that the motorman was negligent in thus opening the car door and permitting her to descend in the path of the oncoming vehicle, and that such negligence was the proximate cause of her injuries and damages, including the loss of one week's time from her employment.

On appeal it is contended that the court erred in directing a verdict for defendants and in denying plaintiff's challenges to, and "motions to quash," the jury panel.

■ In directing a verdict in favor of defendants, the court indicated that its order was based upon two Minnesota decisions which it regarded as controlling, to-wit: Ruddy v. Ingebret, 164 Minn. 40, 204 N. W. 630, 44 A. L. R. 159, and Fox v. Minneapolis St. Ry. Co. 190 Minn. 343, 251 N. W. 916. In these cases, on facts substantially similar to those here, verdicts were directed for defendant street railway company on the question of negligence. In the Ruddy case the court expressed the basis for the rule as follows (164 Minn. 41, 42, 43, 204 N. W. 630, 44 A. L. R. 159):

"Under ordinary conditions and in the absence of defective equipment and manipulation of its own instrumentalities an adult passenger on a street car ceases to be such when at the end of his trip he steps from the car onto the street. * * * But in this case the evidence would justify a finding that the passenger was struck be-

fore her feet were on the street and consequently we will discuss this case on the theory that she was a passenger at the time of the injury and entitled to care accordingly.

"The statute requires the driver of the truck to stop not less than 'ten feet behind said street car.' * * * The legislature did not make the statute for rear gates only. It applies equally to the front exit doors.

"* * * It is the claim of plaintiffs that defendant is charged with the duty of protecting the alighting passenger from danger from vehicles and that by use of the mirror the motorman should look for automobiles along the side of the car and operate the street car so that a passenger stepping onto the street will not be subjected to this danger. But this is an obvious danger incident to all streets. It is a peril known to all passengers. The danger may come without warning, and, as in this case, it usually results from a violation of the statutory prohibition. In fact, the risk from such danger is more apparent to the passenger than to the motorman because the passenger can, and should, remain on the street car until he knows that it is safe for him to step onto the street. Being able to so effectually care for himself, the law should not charge someone else, who obviously cannot do so as well, with the duty of protecting him from such obvious and common dangers. It would, under the circumstances, be impracticable to require the company to take the responsibility of protection against these obvious dangers of the street. The motorman has no way of knowing when a driver will instantaneously become a wrongdoer. He at best could have but little judgment as to these dangers when he is attending his usual duties.

"* * * For him [the passenger] the duty is simple and easy. For the company the responsibility would be so burdensome and impracticable that it would be unreasonable, hence cannot be held to be its duty. Such risks belong to the passenger and the company cannot be charged with the duty of protecting him or of giving him warning of such existing dangers.

"The law does not impose upon a street railway company a duty

incompatible with the ordinary operation of its business. A rule that is not reasonably susceptible of practicable obedience will produce injustice. In this case there was no violation of duty by the company."

Plaintiff asserts that in the instant case there are facts present which take it out of the rule expressed in the Ruddy case. She testified that after she was struck by the automobile she heard the motorman state that he saw the car coming very fast but took a chance on its stopping. The motorman denied making this statement. The plaintiff's attending physician testified that the motorman said to him: "I saw this fellow coming. He was moving right along." This the motorman likewise denied.

It is plaintiff's contention that such testimony indicates the case is governed by the rule that negligence may consist of failure to warn of known dangers of which another is unaware. However, the motorman's admissions as above set forth could scarcely in themselves establish this type of negligence. The accident happened at night, and obviously the motorman's view through the rearview mirror could disclose only the lights of an oncoming automobile, from which it would be difficult to determine the question of speed. While it might be concluded from his admissions that the motorman believed the motorist was going fast, there is nothing in this alone which would compel him to assume that the motorist was about to violate the laws requiring him to stop ten feet back of the open streetcar gates. The other duties devolving upon the motorman, including the observation of cross. traffic, the keeping of a lookout for pedestrians crossing the highway, the operation of the mechanical equipment in the car, the opening of the gates, and similar duties, permitted him little opportunity for speculation upon the intentions of the oncoming driver. He had the right to assume that the motorist would obey the law. His opportunity for observation was possessed to the same or to a greater extent by plaintiff, who, according to her testimony, looked back for oncoming traffic but saw nothing.

The elements stressed by plaintiff here were present in the cases above cited. An examination of the records and briefs therein indicates that the same arguments here presented were advanced by counsel there and considered by this court in connection therewith. Notwithstanding this, the court adopted the rule above set forth, therein following the great majority of decisions in this respect.

In the case of Fox v. Minneapolis St. Ry. Co. 190 Minn. 343, 348, 350, 251 N. W. 916, 918, the question was discussed as follows:

"We are now to consider whether the court was in error in granting the railway company judgment notwithstanding the verdict. We are, of course, to accept the view of the evidence most favorable to plaintiff. The jury by its verdict found that plaintiff was not guilty of contributory negligence in attempting to alight from the street car under the existing conditions; * * *.

\* \* \* \* \*

"* * * As far as the evidence disclosed, she [the plaintiff] was in full possession of her mental faculties, and no claim is made that her hearing and eyesight were other than normal. There is nothing to indicate that plaintiff's injury resulted from her physical or other inability to protect herself in going down the steps. She reached the lower step without any assistance or difficulty."

It is not disputed here that plaintiff was in possession of all her faculties and capable of making all the necessary observations before stepping into the street. She had an opportunity equal to or better than defendant motorman to observe oncoming traffic. Her height, five feet one inch, was sufficient to permit her an unobstructed view of the rear either through the front gate windows after such gates were opened, or through the rear windows of the streetcar, before she alighted therefrom, and had she so looked she could not have failed to observe the oncoming automobile.

Under the foregoing circumstances we are governed by the rule established in the cases cited and hold that the trial court properly directed a verdict for defendants on the issue of negligence.

The determination of the foregoing questions eliminates the necessity of considering the court's denial of plaintiff's challenges to the jury panel. The direction of a verdict in favor of defendants foreclosed the possibility of any prejudice resulting to plaintiff by reason of the method followed in calling the jury panel. The manner of selection could have no bearing or effect on the outcome of this case, and hence it becomes a moot question insofar as this appeal is concerned.

Affirmed.

MR. JUSTICE LORING, absent because of accidental injuries, took no part in the consideration or decision of this case.