## MILO GILLSON v. J. E. OSBORNE, *d. b. a.* ACE MOTOR COACH COMPANY.[1]

May 25, 1945.

No. 34,009.

[1]Reported in 19 N. W. (2d) 1.

*Meighen, Knudson & Sturtz,* for appellant.
*Floyd V. Nichols,* for respondent.

MATSON, JUSTICE.

Appeal from an order denying defendant's motion for judgment *non obstante* or a new trial.

Defendant operates on regular schedules a passenger bus system in Albert Lea. On October 17, 1942, at about 9:00 p. m., plaintiff was a passenger on one of defendant's buses en route from the business section to his home. Plaintiff, who fell and was injured upon alighting from the bus, contends that the bus, instead of stopping at the usual place by or a few feet west of the sidewalk at the corner or intersection, stopped 16 to 20 feet to the east alongside of a homemade curb constructed of rough limestone blocks laid end to end. Witnesses agreed that the curb was completely covered with leaves and could not be seen. Testimony placed the bus about 12 or 18 inches from the curb. Plaintiff asserts that he put

out his left foot and stepped directly from the lower bus step into a crevice in the curb, between the ends of two limestone blocks, whereby he tripped and was thrown violently to the ground alongside the vehicle. Defendant denies that the bus failed to stop at the usual place, and also alleges that plaintiff fell after he had alighted and that he was therefore no longer a passenger to whom defendant owed any duty. Both at the close of plaintiff's case and at the close of the testimony, defendant moved for a directed verdict. The principal issues involve the existence or nonexistence of the passenger-carrier relation and the questions of negligence and contributory negligence.

■ Where a verdict is assailed on appeal, the evidence will be viewed in the light most favorable to the prevailing party. Vorlicky v. Metropolitan L. Ins. Co. 206 Minn. 34, 287 N. W. 109; Rochester Bread Co. v. Rapinwax Paper Co. 193 Minn. 244, 258 N. W. 302.

■ The relation of passenger and carrier does not terminate, as a general rule, until the passenger has completed in safety the act of alighting from the streetcar or bus.[2] Whether the injury was the direct and proximate result of the act of alighting (while the person injured was therefore still a passenger), or the direct and proximate result of acts arising subsequently to the completion of the act of alighting (when the injured person had then ceased to be a passenger) is a question of fact for the jury where the evidence is in conflict. Here, the evidence was in conflict, and the matter was properly left to the jury under adequate court instructions. Plaintiff said that he fell as he was in the process of alighting. Ross Ascher, one of two fellow passengers, who testified that plaintiff was clear of the defective curb when he fell, gave other

[2] Reid v. Minneapolis St. Ry. Co. 171 Minn. 31, 213 N. W. 43; Ruddy v. Ingebret, 164 Minn. 40, 204 N. W. 630, 44 A. L. R. 159; Lentz v. M. & St. P. S. R. Co. 135 Minn. 310, 160 N. W. 794; 1 Dunnell, Dig. § 1207; 13 C. J. S., Carriers, § 565; 10 Am. Jur., Carriers, § 1008; 4 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 2172; 5-6 Huddy, Cyc. of Auto. Law (9 ed.) § 166, note 14d, and cases cited. See, Kieger v. St. Paul City Ry. Co. 216 Minn. 38, 11 N. W. (2d) 757.

testimony which the jury could reasonably construe as contradictory and subject to a different interpretation. He said: "I figure he [plaintiff] stepped on one of them cobblestones there." There was no evidence as to any cobblestones or other stones except those constituting the curb. Later, Mr. Ascher added that the plaintiff "stepped on out and rolled," and again he said: "No, I didn't see what he stepped on." When he was asked if he was "able to see the curb at all for the leaves," he replied: "I don't think you would. *It was dark,* and you know, the leaves were there thick, and you wouldn't be able to see it there." (Italics supplied.) Mr. Ascher's testimony was far from being explicit and clear.

The other copassenger, Mrs. Ascher, who testified that plaintiff was clear of the bus when he fell, upon being asked if plaintiff would have fallen if he had stood still and brought his second foot alongside his first foot, said: "I wouldn't know that, but I know he did have one foot off the bus, and to take the other step on the ground." From Mrs. Ascher's statement, the jury could reasonably infer that plaintiff had not had time to place both feet on the ground so as to complete the act of alighting before he fell. The bus driver could not say whether plaintiff had taken any steps on the ground before falling. On this conflicting evidence, we cannot hold that a finding that plaintiff was injured in the act of alighting, while therefore still a passenger, was manifestly and palpably contrary to the evidence. On this point the verdict is amply sustained.

■ The Minnesota rule is that a street railway company meets its full duty toward a passenger in protecting him against surface defects as to surface areas over which it has no control, particularly in a paved street, when it exercises reasonable care in selecting a reasonably safe place for him to alight. Reid v. Minneapolis St. Ry. Co. 171 Minn. 31, 213 N. W. 43; 1 Dunnell, Dig. & Supp. §§ 1214 and 1261. The operators of passenger buses likewise have no control over street, sidewalk, and boulevard surfaces, and to them must be applied the same standard of ordinary care in protecting passengers. It is to be noted, however, that a bus is a

more flexible instrumentality of transportation in affording the driver in most instances greater freedom of vehicle movement as to selecting reasonably safe places for passengers to alight on sidewalks and boulevards, whose surfaces as a rule are subject to few changes in producing new hazards. A passenger, however, with no accompanying negligence of the carrier in selecting a reasonably safe place for him to alight, takes the street, sidewalk, or boulevard as he finds it. The carrier is liable only for the negligent selection of an unsafe place. Reid v. Minneapolis St. Ry. Co. *supra*.

In order to impose liability for injuries resulting to a passenger from such surface defects, it should be shown that defendant had knowledge of the defective condition or that by the exercise of ordinary care it should have known of it. Whether the place is unsafe and whether such condition is known or could have been discovered by the exercise of ordinary care will usually be for the determination of the jury. Reid v. Minneapolis St. Ry. Co. *supra;* Stewart v. St. Paul City Ry. Co. 78 Minn. 85, 80 N. W. 854.

Here, defendant asserts that the verdict is not sustained by the evidence in that no negligence has been shown. It appears that the defective curb had been in place for many years; and, although there was testimony that it was covered practically all the time by leaves, grass, or snow, nevertheless, the jury might infer from all the circumstances that defendant should have known of the defect. The bus passed there 18 times daily. It was not a casual stopping place; it was the point of entrance and exit for many residents living in the area adjacent to Oakwood Park Circle. The deposition of the driver, read to the jury, contained the direct statement that he knew of the defect or crevice in the curb, and, although the record is not clear as to when he gained this knowledge, the evidence must be treated in the light most favorable to the plaintiff. We also have plaintiff's direct statement that the bus driver did not stop at the usual place, but instead from 16 to 20 feet to the east. Although the curb was covered with leaves, the driver knew the approximate location of the curb and parked far enough away to avoid damage to the tires. The danger concealed

beneath the leaves, however, was not an obvious one to plaintiff. If the jury accepted plaintiff's testimony that the bus did not park in the usual place, it might reasonably infer that defendant was negligent in not warning plaintiff of the unusual situation before he alighted. See, Fox v. Minneapolis St. Ry. Co. 190 Minn. 343, 251 N. W. 916. There was conflicting testimony as to the degree of visibility—a condition affected by the shadows cast by nearby trees and by the bus itself. The jury's verdict is not manifestly and palpably contrary to the evidence and must be sustained. It was properly a question for the jury to determine whether defendant was negligent in selecting a reasonably safe place for plaintiff to alight.[3]

■ Was plaintiff guilty of contributory negligence as a matter of law? "It is well settled that even where a carrier is negligent, if the injury arose from the want of ordinary * * * care on the part of the person injured, the carrier is not liable." Dahl v. M. St. P. & S. S. M. Ry. Co. 57 N. D. 538, 549, 223 N. W. 37, 41. "Knowledge which can be obtained by looking is imputed to one who fails to look, when there is a duty to look." Curtis v. Capitol Stage Lines Co. (Mo. App.) 27 S. W. (2d) 747, 750. It must appear, however, that the failure on the part of the injured passenger to use ordinary care was the proximate cause of the injury in order to defeat a right of recovery. "There are two essential elements of contributory negligence, want of ordinary care and causal connection between the act and the injury * * *." 4 Dunnell, Dig. & Supp. § 7015. "Regardless of how negligent plaintiff might have been, if his actions did not contribute to or were not a material element in the happening of the accident here involved, the defense of contributory negligence is not effective as against him." Guile v. Greenberg,

[3]Reid v. Minneapolis St. Ry. Co. 171 Minn. 31, 213 N. W. 43; Mardorf v. Duluth-Superior Transit Co. 194 Minn. 537, .261 N. W. 177; Mardorf v. Duluth-Superior Transit Co. 199 Minn. 325, 271 N. W. 588; Lentz v. M. & St. P. S. R. Co. 135 Minn. 310, 160 N. W. 794; Stewart v. St. Paul City Ry. Co. 78 Minn. 85, 80 N. W. 854.

192 Minn. 548, 551, 257 N. W. 649, 650; Restatement, Torts, § 463; 38 Am. Jur., Negligence, § 213.

■ Here, plaintiff frankly admits that he did not look where he was stepping when he alighted from the bus. He was in good health and possessed of all his faculties. Clearly, he failed to use ordinary care, but it does not appear that if he had looked he would have discovered the danger concealed beneath the leaves. There was also some conflict of testimony as to the visibility in the immediate area where he alighted. The jury could reasonably find that it was useless for plaintiff to look, and that therefore his failure to look was not a proximate cause of his injuries. Although plaintiff lived in the immediate vicinity and was familiar with the area, the failure of the bus to stop at the usual place made whatever knowledge he had of his surroundings of little value. He had not had occasion to use the defective portion of the curb and could not reasonably be charged with knowledge of its defects. Whether plaintiff's failure to use ordinary care was a proximate cause of the injury was here a question of fact, and as such the issue of contributory negligence was for the jury to determine. Mardorf v. Duluth-Superior Transit Co. 194 Minn. 537, 261 N. W. 177; Mardorf v. Duluth-Superior Transit Co. 199 Minn. 325, 271 N. W. 588; Wildes v. Wildes, 188 Minn. 441, 247 N. W. 508; Restatement, Torts, § 476, comment a; 4 Dunnell, Dig. & Supp. §§ 7015, 7033, 7048.

We have carefully considered the exceptions taken to the court's charge to the jury. The charge was adequate. A charge to the jury must be examined as a unit and not from the standpoint of passages isolated from their context or from subsequent qualifying provisions. The court's statement of the claim of plaintiff as to the condition of the curb was stated only as a claim and could not have resulted in prejudice, especially in view of the subsequent instruction that defendant had no control thereof and was not responsible for its condition.

The jury's verdict of $625 for plaintiff is not excessive and is not indicative of passion and prejudice. Plaintiff, whose earnings

varied from $150 to $200 per month, was laid up for three or four months, suffered considerable pain and inconvenience, and also incurred medical expense at a cost of $59.

Affirmed.

